# Exhibit B

**REVOLVING DIP CREDIT NOTE**

$3,000,000                                                                                                              June_ , 2016

**FOR VALUE RECEIVED,** on or before the earlier of (a) July 30, 2016; (b) the date of acceleration of the Obligations of Borrower, (c) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case (the "Maturity Date"), the undersigned (hereinafter referred to as "Borrower"), promises to pay to the order of Roywell, LLC (the "DIP Lender") the principal amount of Three Million DOLLARS ($3,000,000) ("Total Principal Amount"), or such amount less than the Total Principal Amount which is outstanding from time to time if the total amount outstanding under this Revolving Credit Note ("Note") is less than the Total Principal Amount, together with interest at the rate set forth below on such portion of the Total Principal Amount which has been advanced to Borrower from the date advanced until paid. The total amount of the advances hereunder shall not exceed $3,000,000.

**Interest Rate.** The unpaid principal amount of this Note shall bear interest at the rate of Wall Street Journal Prime plus 5% per annum compounded semi-annually based on a year of 360 days; provided, however, that under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**Repayment Terms.** Accrued interest shall be due and payable at Maturity. The outstanding principal balance of this Note, together with all accrued but unpaid interest, shall be due and payable by Borrower on or before the Maturity Date. All proceeds of pre-petition and post-petition accounts receivable shall be deposited into a lock box and applied first against the pre-petition revolving line of credit. If there is any surplus, it shall be applied to the DIP Loan.

All payments of principal or interest on this Note shall be made in lawful money of the United States of America in immediately available funds as the holder of this Note shall designate in writing to Borrower. If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day (as hereinafter defined), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which nationally chartered banking associations are ordinarily closed. All regularly scheduled payments of the indebtedness evidenced by this Note shall be applied first to any accrued but unpaid interest then due and payable hereunder and then to the principal amount then due and payable. To the extent that any interest is not paid on or before the fifth (5th) day after it becomes due and payable, the holder of this Note may, at its option, add such accrued interest to the principal of this Note. Notwithstanding anything herein to the contrary, upon an Event of Default (as hereinafter defined) or at maturity, whether by acceleration or otherwise, all principal of this Note shall, at the option of the holder of this Note, bear interest at a rate equal to prime plus ___% per annum until paid, subject to the provisions of this Note entitled "Compliance with Usury Laws."

**Prepayment without Penalty.** Borrower may from time to time prepay all or any portion of the outstanding principal balance of this Note without premium or penalty.

**Advances**. Advances under the Note shall be made at the request of the Borrower pursuant to written requests to the DIP Lender in accordance with the approved budget with a 10% variance per line item so long as the amount used does not exceed the total amount for each weekly period in the budget.   The initial draw shall be funded upon interim approval by the bankruptcy court.  Subsequent draws shall be made upon request so long as no defaults exist.

**Purpose.**  The proceeds of loans made hereunder may only be used to pay those costs and expenses contained in the DIP Budget, at the times and for the purposes identified in such DIP Budget, and interest due hereunder at Maturity. Unfavorable variances of more than 10% on budgeted expense amounts will require advance approval from DIP Lender.  Such approval will not be unreasonably withheld.  Emergency expense requests will be submitted to DIP Lender as soon as practical for DIP Lender's approval.  The DIP Budget, and any modification to or amendment or update of the DIP Budget, shall be in form and substance acceptable to the DIP Lender. The DIP Budget may be amended or modified in writing from time to time only with the written consent of the DIP Lender, and such amendment or modification shall not require the consent of the U.S. Trustee or approval of the Court. The Debtor shall update the DIP Budget from time to time, with such changes to be made promptly upon learning of a material change in expected revenues or expenses, and in any event at least once per month (provided that any update shall be in form and substance acceptable to the DIP Lender, and shall be only deemed to be amended or modified based on their written consent), in accordance with the DIP Loan Documents. Any such modification of the DIP Budget, other than regular updates, shall be filed with the Court

**Administrative Claim.**   DIP Lender shall be allowed a super priority administrative expense claim against the Borrower as provided by 11 U.S.C. §§ 364(c)(1), 503(b) and 507(a) of the United States Bankruptcy Code.

**Security Agreement**.  This Note is secured by a separate DIP Security Agreement dated of even date herewith.

**Prohibition Against Offset.**  Absent the occurrence of an Event of Default, as defined herein, DIP Lender shall be prohibited from offsetting any obligation owed by Borrower, other than this Note, to DIP Lender.

**Event of Default.** Borrower agrees that upon the occurrence of any one or more of the following events of default ("Event of Default"):

 (a) the Borrower shall fail to pay any principal or interest of the Postpetition Debt or any fee or any other amount of the Postpetition Debt when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise.

(b) the Borrower shall fail to observe or perform any covenant or condition the DIP Credit Agreement.

(c) the Bankruptcy Court shall enter, or the Borrower shall seek or support the entry of, any order:

(i) amending, supplementing, altering, staying, vacating, rescinding or otherwise modifying any order in any manner which could reasonably be expected to result in a Material Adverse Effect;

(ii) appointing: a Chapter 11 trustee that is not appointed as a result of a motion filed by the DIP Lender: or a responsible officer or an examiner pursuant to Section 1104 of the Bankruptcy Code with enlarged powers relating to the operation of the business of the Borrower (powers beyond those set forth in Section 1106(a)(3) and (4) and 1106(b) of the Bankruptcy Code in the Bankruptcy Case, unless such motion is agreed to by the DIP Lender;

(iii) dismissing the Bankruptcy Case or converting the Bankruptcy Case to a Chapter 7 case without the consent of the DIP Lender; OR

(iv) granting relief from the automatic stay under Section 362 of the Bankruptcy Code to the holder of any claim against the Borrower, which order enables the holder of such claim to exercise any right or remedy against the collateral, except for such orders that have already been entered as of the date hereof.

(d) The Borrower or any affiliate shall seek to, or shall support (in any such case by way of motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Borrower or any affiliate) any other Person's motion to, disallow in whole or in part the DIP Lender's claims or to challenge the validity and enforceability of the DIP Liens.

(e) An application shall be filed by the Borrower for the approval of, or there shall otherwise arise, any other superpriority claim in the Bankruptcy Case which is *pari passu* with or senior to the claims of the DIP Lender against the Borrower unless after giving effect to the transactions contemplated by such application, all secured obligations (whether contingent or otherwise) shall be paid in full in cash. The entry of an order authorizing the obtaining of credit or the incurrence of Debt by the Borrower that is secured by a Lien on any or all of the Collateral, which is senior to or *pari passu* with the security interests and liens against the Collateral that is granted to the DIP Lender.

(f) The Borrower shall make any payment on any Debt incurred before the Filing Date, other than as permitted under the DIP Budget, or as permitted hereunder and other than any payment of any Debt owing to the Borrower and any payment approved by the Bankruptcy Court of any Debt.

(g) The commencement of any action against the DIP Lender by or on behalf of the Borrower or any of its affiliates or any of their respective agents.

(h) The entry of an order authorizing recovery by any person from the Collateral or any adequate protection liens granted with respect thereto for any costs of preservation or disposition thereof under Section 506(c) of the Bankruptcy Code or (except as provided in the Final Order) authorizing the use of cash collateral without consent in writing by the DIP Lender. The entry of an order subsequent to the date hereof granting adequate protection with respect to pre-petition indebtedness (other than as provided in an Interim Order or the Final Order, or as otherwise approved by the DIP Lender and the Bankruptcy Court). Notwithstanding the foregoing, it shall only be a default hereunder if the lien of the DIP Lender is impaired or if the Debtor is required to make payments out of the DIP loan proceeds or the Collateral which are neither in the budget approved by the DIP Lender or otherwise consented to by the DIP Lender. It is expressly understood that the granting of a lien junior to the DIP Lender shall not be considered an impairment.

(i) The Borrower shall file, support, or seek confirmation of a plan of reorganization or liquidation, or such plan of reorganization or liquidation shall be confirmed in any of the Bankruptcy Case, which does not provide for both termination of the Commitment and payment in full of the DIP Obligations in cash on the effective date of such plan, without the prior written consent of the DIP Lender.

(i) The entry of an order dismissing the Bankruptcy Case that does not provide for the termination of the commitment and payment in full of the Postpetition debt in cash prior to dismissal, without the prior written consent of the DIP Lender; and

(j) Any motions to approve procedures regarding the sale of Collateral, any plan or disclosure statement or supplements or amendments thereto, or any orders approving or amending any of the foregoing, are not in form and substance reasonably acceptable to the DIP Lender, unless such motion provides for payment in full of the DIP Loan.

(k) Borrower's default under the terms of any final order in the Bankruptcy Case approving, inter *alia,* this Note and/or the other Loan Documents.

(l) Borrower shall fail to file a motion to sell substantially all of its assets in form and substance satisfactory to DIP Lender no more than three business (3) days after the filing of Borrower's Chapter 11 petition.

(m) Borrower fails to obtain a hearing on the motion to sell substantially all of its assets no later than 30 days after such motion is filed.

The holder of this Note may, at its option, upon notice (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, (ii) refuse to advance any additional amounts under the Note, (iii) pursue any and all other rights, remedies and recourse available to the holder hereof, at law or in equity against the Borrower, or (iv) pursue any combination of the foregoing; provided

however, that when exercising such rights, the DIP Lender shall obtain a lifting or modification of the automatic stay under Section 362 of the Bankruptcy Code against the Collateral from the Bankruptcy Court, if necessary; provided, however, that the DIP Lender shall not be required to seek relief from the stay if this Note is not paid in full by the Maturity Date or such time thereafter as the DIP Lender agrees in its sole discretion.  In such event, the stay will automatically lift to permit foreclosure under this Note and the DIP Lender's pre-petition notes.  The failure to exercise the option to accelerate the maturity of this Note or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not waive the right of the holder of this Note to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default. The rights, remedies and recourse of the holder hereof, as provided in this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof. The acceptance by the holder hereof of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any right, remedy or recourse of the holder hereof, or nullify any prior exercise of any such right, remedy or recourse, or (ii) impair, reduce, release or extinguish the obligations of Borrower.

**Compliance With Usury Laws**. This Note is intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. Accordingly, notwithstanding any provision to the contrary in this Note, in no event whatsoever shall this Note require the payment or permit the payment, taking, reserving, receiving, collection or charging of any sums constituting interest under applicable laws which exceed the maximum amount permitted by such laws. If any such excess interest is called for, contracted for, charged, taken, reserved, or received in connection with this Note, or in any communication by any person to Borrower or any other person, or in the event all or part of the principal or interest shall be prepaid or accelerated, so that under any of such circumstances or under any other circumstance whatsoever the amount of interest contracted for, charged, taken, reserved, or received on the amount of principal actually outstanding from time to time under this Note shall exceed the maximum amount of interest permitted by applicable usury laws, then in any such event it is agreed as follows: (i) the provisions of this Section shall govern and control; (ii Borrower shall not be obligated to pay the amount of such interest to the extent such interest is in excess of the maximum amount of interest permitted by applicable usury laws; (iii) any such excess which is or has been received notwithstanding this Section shall be credited against the then unpaid principal balance of this Note or, if this Note has been or would be paid in full by such credit, refunded to  Borrower, and (iv) the provisions of this Note, and any communication to Borrower, shall immediately be deemed reformed and such excess interest reduced, without the necessity of executing any other document, to the maximum lawful rate allowed under applicable laws as now or hereafter construed by courts having jurisdiction hereof or thereof. Without limiting the foregoing, all calculations of the rate of interest contracted for, charged, taken, reserved, or received in connection herewith which are made for the purpose of determining whether such rate exceeds the maximum lawful rate shall be made to the extent permitted by applicable laws by amortizing, prorating, allocating and spreading during the period of the full term of this Note, including all prior and subsequent renewals and extensions, all interest at any time contracted for, charged, taken, reserved, or received..

**Costs of Collection: Waivers.** Borrower agrees to pay, in addition to all other sums payable hereunder, all costs and expenses of collection of this Note, including but not limited to reasonable attorneys' fees.

**GOVERNING LAW; VENUE; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.** THIS NOTE SHALL BE GOVERNED BY AND BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF. THIS NOTE IS **PERFORMABLE** IN HARRIS COUNTY, TEXAS. BORROWER AGREES THAT THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, VICTORIA DIVISION SHALL BE THE EXCLUSIVE VENUE FOR LITIGATION OF ANY DISPUTE OR CLAIM ARISING UNDER OR RELATING TO THIS NOTE, AND THAT SUCH COURT IS A CONVENIENT FORUM IN WHICH TO DECIDE ANY SUCH DISPUTE OR CLAIM.

**WAIVER OF JURY TRIAL.** BORROWER HEREBY IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH.

**FINAL AGREEMENT.** THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE DIP LENDER AND BORROWER WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**BORROWER:**

**ROYWELL SERVICES, INC.**

By: _____

Title: _____

# DIP SECURITY AGREEMENT

**by**

**ROYWELL SERVICES, INC.**

**as Borrower and Debtor-In-Possession**

**In Favor of**

**_____.**
**as DIP Lender**

**Dated June\_\_, 2016**

P a g e | 2

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **SECTION 1** | **DEFINITIONS**..................................................................................................3 |
| **SECTION 2** | **GRANT OF SECURITY INTEREST**..................................................................4 |
| **SECTION 3** | **FURTHER ASSURANCES**..................................................................................5 |
| **SECTION 4** | **PRIORITY OF SECURITY INTEREST**………………………………………..5 |
| **SECTION 5** | **JURISDICTION OF ORGANIZATION; ORGANIZATION NUMBER**……..5 |
| **SECTION 6** | **RISK OF LOSS, SALE OF COLLATERAL**…………………………………….6 |
| **SECTION 7** | **REMEDIES**………………………………………………………………………..6 |
| **SECTION 8** | **RIGHTS CUMULATIVE**………………………………………………………...7 |
| **SECTION 9** | **REMEDIES NOT EXCLUSIVE**…………………………………………………....7 |
| **SECTION 10** | **ASSIGNMENT**……………………………………………………………………7 |
| **SECTION 11** | **SUCCESSORS AND ASSIGNS**…………………………………………………..7 |
| **SECTION 12** | **NOTICES**…………………………………………………………………………..7 |
| **SECTION 13** | **GOVERNING LAW**……………………………………………………………...7 |
| **SECTION 14** | **CONFLICT**………………………………………………………………………..8 |
| **SECTION  15** | **SEVERABILITY** …………………………………………………………………8 |
| **SECTION 16** | **COUNTERPARTS**………………………………………………………………..8 |
| **SECTION 17** | **DISTRIBUTION OF PROCEEDS**………………………………………………..8 |
| **SECTION 18** | **WAIVER OF JURY TRIAL**……………………………………………………..8 |

## SECURITY AGREEMENT

This SECURITY AGREEMENT (this "***Agreement***"), is entered into as of the ___ day of June, 2016, between the undersigned Borrower ("***Borrower***"), and Roywell LLC, a Delware limited liability company as DIP Lender ("***DIP Lender***").

### **RECITALS**

**A.** On June 6, 2016, Borrower commenced its Chapter 11 Case under Case No. 16-_____V-11 (the "***Chapter 11 Case***") by filing a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "***Bankruptcy Code***"), with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Borrower continues to operate its business and manage its property as a debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**B.** The Borrower has requested that the DIP Lender provide a secured, credit facility to the Borrower of up to three million dollars ($3,000,000) to fund the working capital and general corporate requirements of the Borrower during the pendency of the Chapter 11 Case.

**C.** The DIP Lender may from time to time, upon the request of the Borrower, make loans to the Borrower under the Revolving DIP Credit Note (the "Note"), dated as of the date hereof, between the Borrower and the DIP Lender in amounts not exceeding in the aggregate at any time outstanding three million dollars ($3,000,000).

**D.** The Borrower has agreed to secure all of their obligations under the Note by granting to the DIP Lender, under and pursuant to this Agreement and the Order Approving the DIP Financing (the "DIP Order"), a security interest in and lien upon the Collateral up to the amount of funds advanced (as hereinafter defined) having the priority specified in the DIP Order.

NOW, THEREFORE, in consideration of the foregoing premises, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Borrower hereby agrees with the DIP Lender, as follows:

**1.** Definitions. As used in this Agreement, unless the context otherwise requires.

"***Applicable Law***" means, in respect of any Person, all provisions of constitutions, statutes, rules, regulations and orders of governmental bodies or regulatory agencies applicable to such Person, including, without limiting the foregoing, all orders, decisions, judgments and decrees of all courts and arbitrators in proceedings or actions to which the Person in question is a party or by which it is bound.

"*Lien*" means any lien, encumbrance, security interest, charge, or other similar claim on property.

"*Permitted Lien*" means, as applied to any Person:

    a)    Any Lien in favor of DIP Lender or its successors and assigns given to secure the obligations under certain debentures.

    b)    Liens for taxes, assessments, governmental charges or levies not yet delinquent and Liens for taxes, assessments, judgments, governmental charges or levies or claims the non-payment of which is being diligently contested in good faith by appropriate proceedings and for which adequate reserves have been set aside on such Person's books, but only so long as no foreclosure, distraint, sale or similar proceedings have been commenced with respect thereto;

    c)    Liens incurred in the ordinary course of business in connection with worker's compensation and unemployment insurance;

    d)    Purchase money security interest liens in favor of equipment lenders and/or lessors; and

"*Person*" means an individual, corporation, limited liability company, association, partnership, joint venture, trust or estate, an unincorporated organization a government or any agency or political subdivision thereof, or any other entity.

"*UCC*" means the Uniform Commercial Code as in effect in the State of Texas, as amended from time to time.

"*U.S. Trustee Fees*" means those amounts payable pursuant to 28 U.S.C. §1930(a)(6) and any fees payable to the Clerk of the Court.

2.    <u>Grant of Security Interest</u>. The Borrowers hereby grant and assign to the DIP Lender a continuing security interest (the "*Security Interest*") in the currently owned or hereafter acquired property and rights of Borrower set forth below (collectively, the "*Collateral*"):

    a)    Accounts;

    b)    Inventory;

    c)    Furniture and Equipment;

    d)    <u>General Intangibles</u>. All general intangibles to the extent permitted by Applicable Law; and

e) *Proceeds*. All proceeds of any of the above, and all proceeds of any loss of any of the above, whether insured or not insured, and all other proceeds of any sale, lease or other disposition of any property or interest therein referred to above, or in respect of and policies of insurance covering any or all of the above, indemnity or warranty payments with respect to any of the above, the proceeds of any award in condemnation with respect to any of the property covered above, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds (the "***Proceeds***").

This Agreement and the Security Interest secure payment of all obligations owed to the DIP Lender under the Revolving DIP Credit Note dated of even date hereof (the "Note") or any extension, renewals or amendments thereof, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due (all of the foregoing obligations being hereinafter collectively referred to as the "***Secured Obligations***".

3. Further Assurances. The Borrower hereby authorize the DIP Lender to file such financing statements, continuation statements, and such other documents as the DIP Lender may deem necessary or reasonably desirable to protect or perfect the Security Interest the DIP Lender may deem necessary or reasonably desirable to protect or perfect the security Interest of the DIP Lender in the Collateral. In addition, the Borrower agrees to make, execute, deliver or cause to be done, executed and delivered, from time to time, all such further acts, documents and things as the DIP Lender may reasonably require for the purpose of perfecting or protecting its rights hereunder or otherwise giving effect to this Agreement, all immediately upon request therefor.

4. Priority of Security Interest. The Borrower further represents and warrants that the Security Interest in the Collateral granted to the DIP Lender hereunder shall have at all times the priority granted by the Financing Orders.

5. Jurisdiction of Organization; Organization Number. Borrower represents and warrants that they are duly organized under the laws of the State of Texas. Borrower will not change their names, corporate structures, or organization numbers unless they first provide at least thirty (30) days' advance written notice to the DIP Lender of the intended change and cooperate with the DIP Lender in filing new or amended financing statements to reflect the intended change.

6. Risk of Loss, Sale of Collateral. Any and all injury to, or loss or destruction of, the Collateral shall be at the Borrower's risk. Except for Permitted Liens, Borrower agrees not to sell, transfer, assign, dispose of, mortgage, grant a security interest in, or encumber any of the Collateral in any manner without the prior written consent of the DIP Lender.

7. Remedies. Upon the occurrence and during the continuance of an Event of Default (as defined in the Note), or if the Borrower fails to fulfill its obligations under this Agreement within ten (10) days of demand from the DIP Lender.

a) The DIP Lender, after notice and upon order of the Bankruptcy Court that an Event of Default has occurred and is continuing, shall have all the rights, powers and privileges of a secured party under the UCC and the personal property security legislation in force from time to time in any other applicable jurisdiction in which the Collateral is located, and all other rights and remedies available to the DIP Lender at law or in equity. Borrower covenants and agrees that any notification of intended disposition of any Collateral, if such notice is required by law, shall be deemed reasonably and properly given if given in the manner provided for in Section 12 hereof at least ten (10) days prior to such disposition.

b) Borrower shall, after notice and by order of the Bankruptcy Court, at the request and option of the DIP Lender, notify account debtors and other persons obligated on any of the Collateral of the Security Interest of the DIP Lender in any account, chattel paper, general intangible, instrument or other Collateral and that payment thereof is to be made directly to the DIP Lender or to any financial institution designated by the DIP Lender as its agent therefor, and the DIP Lender may, if a Default or an Event of Default shall have occurred and be continuing, after notice and by Order of the Bankruptcy Court so notify account debtors and other persons obligated on the Collateral. After the making of such a request or the giving of any such notification, Borrower shall hold any proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by such Borrower as trustee for the DIP Lender without commingling the same with other funds of the Borrower and shall turn the same over to the DIP Lender in the identical form received, together with any necessary endorsements or assignments. The DIP Lender shall apply the proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by them to the Secured Obligations of Borrower, such proceeds to be immediately credited after final payment in cash or other immediately available funds of the items giving rise to them.

c) Notwithstanding the foregoing, the DIP Lender shall not have to seek relief from the stay if the DIP Loan and the pre-petition loan are not paid by the Maturity Date or such later time as DIP Lender may agree in its sole discretion.  In such event, the stay automatically lifts to permit DIP Lender to foreclose with respect to both the pre-petition and post-petition loans.

8. <u>Rights Cumulative</u>. Borrower agrees that the rights of the DIP Lender under this Agreement, the Note, the documents executed in connection therewith or any other contract or agreement now or hereafter in existence among the DIP Lender and the Borrower shall be cumulative, and that the DIP Lender may from time to time exercise such rights and such remedies as it may have thereunder and under the laws of the United States and any state or province in which remedies may be exercised with respect to any

party of the Collateral, in the manner and at the time that DIP Lender in its sole discretion desires. Borrower further expressly agrees that the DIP Lender shall not in any event be under an obligation to resort to any Collateral prior to exercising any other rights that it may have against the Borrowers or their other property, or to resort to any other collateral for the Secured obligations prior to the exercise of remedies hereunder.

9. Remedies Not Exclusive. No transfer or renewal, extension, assignment or termination of this Agreement or of the Note, or any other instrument or document executed and delivered by the Borrower to the DIP Lender, nor the taking of further security, nor the retaking or redelivery of the Collateral to the Borrower by the DIP Lender, shall release Borrower from any obligation or payment of such obligation to the DIP Lender. The DIP Lender shall not by any act, delay, omission or otherwise, be deemed to have waived any of its rights or remedies hereunder, unless such waiver is in writing and signed by the DIP Lender then only to the extent therein set forth. A waiver by the DIP Lender of any right or remedy on any occasion shall not be construed as a bar to the exercise of any such rights or remedy which the DIP Lender would otherwise have had on any other occasion.

10. Assignment. Borrower agrees that this Agreement and rights of the DIP Lender hereunder may be assigned by the DIP Lender to any successor or assignee. Borrower may not assign its rights and obligations under this Agreement, in whole or in part.

11. Successors and Assigns. This Agreement shall apply to and bind the respective successors and permitted assigns of the Borrower and the DIP Lender.

12. Notices. Unless otherwise provided, any notice required or permitted under this Agreement shall be given in writing and shall be deemed effectively given upon personal delivery or electronic mail to the party to be notified or via overnight delivery addressed to the party to be notified at the address indicated for such party on the signature page hereto or at such other address as such party may designate by ten (10) days' advance written notice to the other party.

13. Governing Law. The provisions of this Agreement shall be construed and interpreted, and all rights and obligations of the parties hereto determined, in accordance with the laws of the State of Texas except to the extent that another Applicable Law governs the exercise of the DIP Lender's remedies hereunder.

14. Conflict. To the extent that any term, condition, covenant or other provision contained in this Agreement is at any time inconsistent or conflicts with any term, condition, covenant or other provision contained in the Note and covering substantially the same subject matter then the relevant term, condition, covenant or other provisions of the Note shall govern.

15. Severability. If any paragraph or part thereof shall for any reason be held or adjudicated to be invalid, illegal or unenforceable by any court of competent

P a g e | 8

jurisdiction, such Paragraph or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication.

16. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

17. <u>Distribution of Proceeds.</u> The proceeds from any foreclosure, sale, liquidations, or other disposition of, or realization upon, the Collateral as secured creditor hereunder shall be applied by the DIP Lender in its discretion consistent with applicable law..

18. <u>Waiver of Jury Trial.</u> BORROWER AND THE DIP LENDER HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

*[Signatures follow on next page]*

P a g e | 9

IN WITNESS WHEREOF, the undersigned have hereunto set their hands, by and through their duly authorized representatives, as of the day and year first above written.

**B**ORROWER**:**

**ROYWELL SERVICES, INC.**

By: _____

Title: _____