IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ROYWELL SERVICES, INC. | § | CASE NO. 16-60070 -V-11 |
| | § | |
| Debtor. | § | Judge David R. Jones |
| | § | |

**EMERGENCY MOTION OF DEBTOR FOR ORDERS (1) APPROVING SALE OF
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
OTHER INTERESTS, (2) APPROVING BIDDING PROCEDURES IN ADVANCE OF
AUCTION AND VARIOUS BID PROTECTIONS, (3) AUTHORIZING THE
ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, (4) SETTING RELATED DEADLINES
AND HEARINGS AND (5) GRANTING RELATED RELIEF**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE __, 2016, AT_:_0
M, IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN
WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.
UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR
RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-
ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU
MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU
THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS
UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE
MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23
DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU
BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
SHOULD FILE AN IMMEDIATE RESPONSE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Roywell Services, Inc., debtor and debtor in possession ("Roywell" or "Debtor"), hereby

moves the Court on an emergency basis for entry of an order (1) approving the sale of

substantially all assets of the Debtor (the "Purchased Assets") free and clear of all liens, claims,

encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) of Title 11 of the United States Code (the "Bankruptcy Code) collectively (the "Assets"); (2) approving bidding procedures in advance of an auction and related bid protections; (3) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code; (4) setting an auction date, final hearing date and related deadlines; and (5) granting related relief (the "Motion").  In support of this Motion, the Debtor respectfully states as follows:

## I.  Reasons for Emergency

1.      Debtor is an oil field service company which has experienced a dramatic drop in revenues.  Although Debtor has made efforts to trim its expenses, it continues to lose significant amounts of money.  Under these circumstances, the Debtor cannot adequately protect its secured lender.  The secured lender has agreed to fund a short term DIP Loan and to use of cash collateral so the Debtor can run a sale process while maintaining operations.  A motion to approve the DIP Loan has been filed contemporaneously herewith.  Absent the DIP Loan, the Debtor would have no choice but to immediately shut down operations and terminate all of its employees.

## II.  Jurisdiction and Venue

2.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. § § 157, 1334.

3.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(N)&(O).

4.       Venue of the Debtor's Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1409.

5.      The statutory predicates for the relief sought herein are Sections 105, 363, and 365 of the Bankruptcy Code.

### III.    Introduction

6.    The above captioned Chapter 11 bankruptcy case was filed on June  __, 2016 ("Petition Date"), under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. (the "Bankruptcy Code").  The Debtor continues to manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.    No trustee or examiner has been appointed in the Debtor's bankruptcy case and no official committee of unsecured creditors has been formed.

8.    A detailed factual background of the Debtor's business and operations, as well as the commencement of this Chapter 11 case, is more fully set forth in the *Affidavit of John David McLain, Vice President – Operations, in Support of the Debtor's Chapter 11 Petition and Requests for First-Day Relief* which is incorporated herein by reference.

### IV.    Background Information
#### A.  Overview of Debtor

9.    Roywell is an oil and gas service provider with offices in Houston, and Corpus Christi, Texas and maintenance and operating work sites serving the major southwest basins (the Permian, Eagle Ford Shale, and Mid-Continent) in Victoria, Odessa, Taft, Refugio, and Kennedy, Texas and Thomas, Oklahoma. Approximately 70% of Roywell's revenues are generated from its Eagle Ford Shale operating location.  Roywell's primary service, making up one-half of its operations, involves blending "raw" hydrochloric acid with water and other chemicals for use in oil and gas well completions.  The company's operations provide a complete suite of oilfield related services which are segmented into three divisions, (1) acid blending and logistics, (2) pumping, and (3) water transfer services.

10.    Historically, Roywell was very successful in its business operations and had gross revenues in the amount of $111,172,880 in 2014.  However, due to the unexpected downtown in

the oil and gas industry within the past two years, Roywell's profits, like that of all other oil and gas service providers, has suffered significantly during the past year.  To reduce the costs of its operations Roywell has reduced its employee count from 337 in November 2014 to 78 in January 2016 and also shut down its sand hauling operations in 2015.  The company has also actively and diligently sought investments from third parties to continue its business operations.  However, Roywell was unsuccessful in soliciting investors; and the unprecedented decrease in oil and gas prices and the unforeseen overall downturn in the oil and gas industry has left it with no working capital and insufficient revenues.

**B.  Financing History**

11.     Effective November 30, 2011, Roywell entered into a credit agreement with Capital One Bank (the "Credit Agreement").  The Credit Agreement initially provided for an installment note in the amount of $7,000,000 (the "Installment Note"), an equipment loan facility in the amount of $3,000,000 (the "Equipment Loan"), and a revolving credit line of $5,000,000 (the "Credit Line").  The Installment Note was payable in forty-eight (48) monthly installments of $145,833 plus interest and matured on November 30, 2015.  The proceeds from the Installment Note were used to pay-off installment consolidated notes payable to another lender. The Equipment Loan was used to purchase equipment and was converted to an amortizing note with forty-eight monthly installments of $62,200 plus interest and was scheduled to mature on November 30, 2016.   In December 2012, Roywell obtained an additional $2,000,000 equipment loan from Capital One Bank which was converted to an amortizing note with forty-eight installments and maturing on June 30, 2017.  The Credit Line was renewed and extended on October 15, 2014. .

12.      In conjunction with the Credit Agreement, Roywell executed certain Security Agreements dated on or about December 6, 2011 and October 15, 2014 , granting Capital One Bank a security interest in substantially all of its assets.   Capital One Bank filed UCC-1 financing statements with the Texas Secretary of State on December 6, 2011, and October 16, 2014.  As of the Petition Date, the outstanding balance owing under the Credit Agreement is the sum of approximately $13,960,000.00.

13.      On June 6, 2016, all of the Capital One Bank debt was assigned to Roywell LLC, a Delaware limited liability company ("RLLC") owned by Catapult Services, a private equity company in the oil field services industry.

14.      By separate motion, the Debtor is seeking approval of a DIP financing agreement up to $3.0 million from RLLC as the debtor-in-possession lender ("DIP Lender").

15.      The goal of this Chapter 11 case is to sell the assets of the Debtor through a bidding process which will maximize the amount obtained for the benefit of the estate.   As discussed more fully below, DIP Lender will act as the stalking horse bidder for this sale and will be allowed to credit bid up to the full amount of its prepetition and post-petition claims, and provide $250,000 in cash for the benefit of the estate, administrative claimants, and the unsecured creditors.

## V.      Relief Requested

16.      By this Motion, the Debtor requests the entry of certain orders: (a) approving, in accordance with the terms of the APA (as defined below), the sale of the Purchased Assets to the Buyer (as defined below) free and clear of all liens, claims, encumbrances, and other interests pursuant Sections 105, 363(b), (f), and (m) of the Bankruptcy Code; (b) approving the Bidding Procedures and various bid protections in advance of the proposed Auction (all as defined below); (c) authorizing the assumption, assignment, and sale of the Assigned Contracts (as

defined below) to the Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code (d) setting

a date for an auction, a final hearing and related deadlines; and (e) granting related relief as the

Court shall deem just and proper.

### a. Asset Purchase Agreement

17.     The Debtor has determined in the exercise of its sound business judgment that a

sale of Assets will benefit the Debtor and its creditors.  The Debtor has prepared a form Asset

Purchase Agreement ("APA"), a copy of which (without exhibits and schedules) is attached

hereto as <u>Exhibit "A"</u> and incorporated herein by reference, under which, subject to the Auction

contemplated hereby and subject to Court approval, the qualified bidder with the highest or

otherwise best bid ("<u>Successful Bidder</u>") would purchase the Assets.

18.     The principal terms of the proposed APA are summarized and highlighted as

follows:[1]

| Transaction: | Acquisition by the Buyer via sale of substantially all the Debtor's assets.  See Section 2.1 of the APA. |
|---|---|
| Purchased Assets and Related Consideration: | Stalking Horse Bidder will purchase all the assets specifically identified in Section 2.1 of the APA for $12 million inclusive of: (1) for cash in the amount of the Earnest Money ($250,000); (2) forgiveness of the entire outstanding balance of the DIP Loan; (3) a credit against the secured Indebtedness owed by Seller to Buyer.  See Section 4.1. |
| Excluded Assets: | The Buyer will not acquire excluded assets identified in the APA. See Section 2.1. |
| Excluded Liabilities: | All liabilities other than Assumed Liabilities.  See Section 3.1 of the APA. |
| Assigned Contracts: | Those executory contracts and unexpired leases set forth in Schedule 2.1 of the APA. |
| Closing: | No sooner than the first Business Day after the Sale Order becomes a Final Order or such later time as agreed between Seller and Buyer but no later than 15 days after the Sale Order becomes a Final Order. |

---

[1] To the extent there is any inconsistency between the description of the APA in this Motion and the terms of the APA itself, the APA shall control.

| Topping/Break-up Fees: | None |
|---|---|
| Competing Bids: | Auction will require incremental bids of $200,000 for the first bid, $100,000 for the second through sixth bids, and $50,000 for all remaining bids |
| Creditor Contact Information: | The telephone numbers and contact information for the 20 largest unsecured creditors of the Debtor will be provided to Office of the United States Trustee and any party requesting same. |

19.     The full terms and conditions of the proposed transaction are set forth in the APA and reference should be made to the APA for additional terms. The Debtor believes that value will be maximized by closing the transaction as soon as is practicable, and on the terms proposed in the APA.

20.     Debtor agrees to sell, transfer and convey, to the purchaser the Assets free and clear of liens, claims, and encumbrances.  All liens will attach to the proceeds of the sale.

21.     The Debtor negotiated for the DIP Lender to serve as a stalking horse bidder ("Stalking Horse Bidder"), with no break-up fee.  DIP Lender will be allowed to credit bid up to the full amount of its prepetition and postpetition claim at the time of the auction.  This claim is estimated in an amount in excess of $13.9 million.  No other parties shall be allowed to credit bid.  If DIP Lender is the Successful Bidder, it will also provide $250,000 in cash for the benefit of the estate, administrative claimants, and the unsecured creditors.

22.     The Debtor believes that value will be maximized by closing the transaction as soon as is practicable, and on the terms proposed in the APA.

**b.   The Bidding Procedures**

23.     The Debtor seeks entry of an order substantially in the form of the proposed order attached hereto as Exhibit "B" (the "Sales Procedures Order") setting the date of the Auction, scheduling a date, time and place for a hearing to approve the sale of the Assets (the "Sale

Hearing"), and approving the proposed bidding procedures (the "Bidding Procedures"), and afford certain protections, and certain notices and objection deadlines. The proposed Sales Procedures Order specifies the procedures for objections to the proposed assumption and assignment of certain executory contracts, and approves the notice the Debtor intends to provide of the Auction, the sale of the Assets, and the intended assumption and assignment of executory contracts and unexpired leases. One of the assumed contracts is an Industrial Lease with Roywell Realty LLC which is owned by the majority equity holders of the Debtor. The Industrial Lease is being amended to waive past due arrearages and restate the amount of the rent.

24.      The Debtor believes that the best interest of its estate is served by conducting a public Auction to identify the highest or otherwise best offer for the Assets. The Debtor seeks the Court's approval of the following Bidding Procedures, which are attached hereto as Exhibit C[2]. The Bidding Procedures provide an efficient, fair, and open framework for all interested Qualified Bidders to make proposals to enter into a transaction to acquire the Debtor's assets.

25.      In summary, the Bidding Procedures, which are designed to attract higher and better offers for the Sale of the Assets, provide for the following process in connection with the sale of the Assets:

A.      **Sale of Assets.** The Debtor is offering for sale substantially all its assets.

B.      **The Bidding Process.** The Debtor shall (i) determine whether any person will ultimately become a Qualified Bidder (hereinafter defined), (ii) coordinate the efforts of potential Qualified Bidders in conducting their respective due diligence investigations regarding the Debtor's business, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offer made to purchase the Assets, together or separately (collectively, the "Bidding Process"). A potential Qualified bidder must execute a non-disclosure/non-solicitation agreement requiring such potential bidders to keep all information received from the Debtor confidential and promising not to solicit any employees. Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not deemed to be a potential Qualified Bidder.

---

[2] Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Bidding Procedures.

C.    **Participation Requirements.**   Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in order to participate in the Bidding Process each person (a "Qualified Bidder") must submit a bid (a "Bid") that adheres to the following requirements (a "Qualified Bid"):

(i)    Submitted to ___(name)_____, ____(address)_____, with copies to (a) Theresa Mobley, _____, not later than 5:00 p.m. (CST) on _____, 2016 (the "Bid Deadline").  Debtor shall immediately distribute by facsimile transmission, personal delivery or reliable overnight courier service a copy of each Bid upon receipt to counsel for DIP Lender (a) Edward L. Rothberg, Hoover Slovacek LLP, 5051 Westheimer, Houston, TX 77056, (713) 977-5395 (fax);

(ii)    In the form of a letter from a person or persons that the Debtor deems financially able to consummate the purchase of the Assets, which letter states:

   (a)    that such prospective Qualified Bidder (a "Bidder") offers to purchase the Assets upon the terms and conditions set forth in a copy of Asset Purchase Agreement, together with any Exhibits and Schedules, executed by the Bidder and marked to show proposed amendments and modifications, including, but not limited to, price and the time of closing, and such modifications as are appropriate to reflect any modifications to the Assets proposed to be purchased (the "Marked Agreement");

   (b)    that each such Bidder is prepared to execute a contract within one business day following designation of such Bidder as the Successful Bidder and to consummate the transaction within ten days following entry of an order of the Court in substantially the form of the Order approving the sale to the Successful Bidder;

   (c)    that each such Bidder's offer is irrevocable until the earlier to occur of: (i) 30 days after the Sale Hearing or (ii) two (2) business days after the closing of a purchase of the Assets; and

   (d)    the nature of any insider relationship between any Bidder and the Debtor, or any member of any Committee appointed in the Bankruptcy Case;

(iii)    All Qualified Bids shall be (i) in the opinion of the Debtor, not materially more burdensome or conditional than the terms of the Asset Purchase Agreement;

(iv)    All Qualified Bids shall obligate the Bidder, upon submission of its Marked Agreement, to deposit into escrow not less than 10% of proposed bid or overbid  (the "Good Faith Deposit");

(v)    All Qualified Bids shall be, in the opinion of Debtor, substantially on the same or better terms and conditions as set forth in the Asset Purchase Agreement;

(vi)     All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtor, of committed financing or other ability to perform;

(vii)    All Qualified Bids shall contain no contingencies of any kind or character, including without limitation, contingencies relating to financing, validity, due diligence, or subsequent events other than approval of the Bid by this Court if the Bid is selected as the Successful Bid.

Bids not constituting Qualified Bids or that are otherwise defective cannot be remedied or otherwise resubmitted after the Bid Deadline.

D.     **Due Diligence.**  The Debtor shall afford each Qualified Bidder due diligence access to the Assets.  Due diligence access may include management presentations as may be scheduled by the Debtor, onsite inspections and such other matters which a Qualified Bidder may request and which the Debtor, in its sole discretion, may agree to.  Neither the Debtor nor any of its affiliates (nor any of its representatives) are obligated to furnish any information relating to the Assets to any person except to Qualified Bidders.  Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives.

E.     **Stalking Horse Bidder.**  Roywell LLC ("RLLC"), the pre-petition lender and DIP Lender, is the Stalking Horse Bidder and is allowed to bid up to the full amount of its prepetition and postpetition secured claim, estimated in an amount in excess of $13.9 million. No other party is allowed to credit bid.  The Stalking Horse Bidder is deemed to be a Qualified Bid.

F.     **"As Is, Where Is".**  The sale of any or all of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor its agents or estate except to the extent set forth in the applicable agreement of the Successful Bidder(s) as approved by the Court.  Except as otherwise provided in the applicable agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, equitable servitudes, and interests thereon and there against (collectively, the "Lien Interests") in accordance with section 363 and 365 of the Bankruptcy Code, with such Lien Interests to attach to the net proceeds of the sale of the Assets.

Each Bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection with the Assets, the Bidding Process or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, in the applicable Marked Agreement.

G.     **Auction.**  The Debtor shall conduct an auction (the "Auction") at the offices of Debtor's counsel, Theresa Mobley, Cage Hill & Niehaus LLP, 5851 San Felipe, Suite 950,

Houston, Texas 77057, on a date and time to be determined by the Court, or such later time or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. Only representatives and counsel of the Debtor, DIP Lender, the United States Trustee, any official committee appointed in the Debtor's bankruptcy case, and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction.  The Debtor may announce at the Auction additional rules for conducting the Auction, so long as such rules are not inconsistent with these Bidding Procedures.  Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor determine is relevant, the Debtor, in its sole discretion, may conduct the Auction in the manner it determines will achieve the maximum value for Assets.  Bidding will be conducted in increments of not less than $200,000 for the first bid, $100,000 for the second through sixth bids, and $50,000 for all remaining bids.   To the extent a Stalking Horse Bidder is selected and elects to overbid, a Break-Up Fee will not be paid to the Stalking Horse Bidder if it overbids.   DIP Lender shall be entitled to credit bid up to the full amount of its debt. No other party is allowed to credit bid.

The Debtor may adopt rules for bidding at the Auction that, in its business judgment, will better promote the goals of the bidding process and that are not inconsistent with any of the provisions of the Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

As soon as practicable after the conclusion of the Auction, the Debtor shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (ii) identify the highest or otherwise best offer for the Assets and any second-highest offer.  At the Sale Hearing, the Debtor may present to the Bankruptcy Court for approval the Successful Bid.  The Debtor reserves all rights not to submit any Bid which is not acceptable to the Debtor for approval to the Bankruptcy Court.

H.    **Acceptance of Qualified Bids**.    The Debtor shall sell the Assets to the Successful Bidder, submitting the highest or otherwise best Qualified Bid at the Auction, upon approval of such Qualified Bid by the Bankruptcy Court at the Sale Hearing.  The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

I.    **The Sale Hearing.**  The Sale Hearing shall take place at_____, 2016.  At the Sale Hearing, the Debtor will seek entry of an order, among other things, authorizing and approving the sale to the Successful Bidder, as determined by the Debtor in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Purchase Agreement or the Marked Agreement submitted by the Successful Bidder (as such agreement may be modified prior to, during or after the Auction with the agreement of the Debtor).  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

J.      **Return of Good Faith Deposit.**  Good Faith Deposits of all Qualified Bidders shall be held in an interest bearing escrow account.  Except for the Successor Bidder, the Debtor, acting or Escrow Agent, applicable, shall hold the Good Faith Deposits of all Qualified Bidders until the earlier of (a) two (2) business days after the closing of the sale by which all of the Assets that were the subject of such bid have been disposed of to one or more Qualified Bidders pursuant to these Bid Procedures, and 30 days after the conclusion of the Sale Hearing, at which time the Good Faith Deposits of Qualified Bidders who are not the Successful Bidder will be returned to the Qualified Bidder.   If a Successful Bidder successfully consummates an approved Transaction, such Successful Bidder's Good Faith Deposit shall be applied to the purchase price in such transaction.  If a Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to (i) retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder, and (ii) seek all available damages from such Successful Bidder occurring as a result of such Successful Bidder's failure to perform.

K.      **Modifications.**  The Debtor may determine, in its business judgment, which Qualified Bid(s), if any, is the highest or otherwise best offer, (ii) consult with the representatives of any committee formed in the Bankruptcy Case, or other significant constituents in connection with the Bidding Process, and (iii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Debtor's sole discretion, is (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (z) contrary to the best interests of the Debtor, its estate, creditors and other parties in interest, provided the Debtor advise any official Committee, if formed, of such rejection.  At or before the Sale Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bidding Procedures to obtain the highest or otherwise best offer(s) for the Assets, the Debtor, may impose such other terms and conditions as it may determine to be in the best interests of the Debtor's estate, creditors and other parties in interest.

L.      **Closing.** Closing shall take place within fourteen (14) days after the entry of the Order, but in no event later than _____, 2016, and shall be only upon such order becoming a final order, except upon the waiver of this prerequisite (of a final order) by the Successful Bidder.

26.     At the Auction, the Debtor proposes to offer the Assets for sale.   At the conclusion of the Auction, the Debtor proposes to identify the highest or otherwise best offer for the Assets (to the extent such offer is acceptable to Debtor, the "Successful Bid" and the bidder making such bid, the "Successful Bidder" together with, if applicable, a second-highest bid.  The Successful Bidder will be required to comply with the Court-approved bidding procedures and to commit to proceed to a closing on contractual terms at least as favorable to the Debtor as those set forth in the APA.  At the final hearing on the sale of Assets, the Debtor shall report the results

of the Auction and seek approval of the APA, or one substantially similar proposed by the Successful Bidder.

27.     The Debtor has determined that the Bidding Procedures are in the best interests of the Debtor's estate and are designed to maximize the realizable value of the Assets for the benefit of the Debtor's estate.

### c.   The Assumption and Assignment of Contracts

28.     The Assets to be sold to the Successful Bidder, following the Auction, may include certain executory contracts and unexpired leases which the Debtor intends to assume and assign to the Successful Bidder following the Auction, pursuant to section 365 of the Bankruptcy Code.   A Schedule of the executory contracts which Debtor may assume and assign to the Successful Bidder, including proposed cure amounts ("Cure Amounts"), is attached as Exhibit "D".   Upon entry of the Sales Procedures Order, the Debtor will serve a copy of the Cure Notice, attached hereto as Exhibit E (the "Cure Notice") on all non-Debtor parties to the executory contracts and unexpired leases which Debtor currently intends to assume and assign to the Successful Bidder.   Buyer shall be responsible for paying the Cure Amounts.

29.     The Cure Notice informs each such counterparty that the executory contracts and unexpired leases may be assumed by the Debtor and assigned to a prospective purchaser at the Sale Hearing.   The Cure Notice also identifies the Cure Amounts, if any, which the Debtor believes it owes to such contract or lease counterparty to cure defaults under each respective executory contract and unexpired lease.   The Cure Notice further provides that any objection must set forth all specific defaults in any executory contract or unexpired lease and claim a

specific monetary amount that differs from the amount (if any) specified by the Debtor in the Cure Notice.

30.     In addition, the proposed Sales Procedures Order contemplates that in the event that between the time of the distribution of the Cure Notice and the Auction, the Debtor identify additional executory contracts or unexpired leases not set forth in the Cure Notice, the Debtor will send a supplemental Cure Notice (a "Supplemental Cure Notice") to the counterparties to such additional executory contracts or unexpired leases.

31.     If a non-debtor party to an executory contract or unexpired lease which Debtor intends to assume and assign to the Successful Bidder files an objection to the proposed assumption and assignment or to the proposed Cure Amount identified in the Cure Notice, the Court can determine the cure amount due, or otherwise resolve the objection, at the Sale Hearing.

## VI.     Basis for Requested Relief

32.     By this Motion, the Debtor  requests that, pursuant to Bankruptcy Code §§ 105, 363, and 1146 and Rules 2002 and 6004 of the Bankruptcy Rules, the Court enter an Order (1) approving the sale of substantially all assets of the Debtor free and clear of all liens, claims, encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) of Title 11 of the United States Code; (2) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code; (3) approving bidding procedures in advance of an auction and related bid protections; (4) setting an auction date, final hearing date and related deadlines; and (5) granting related relief.

### A.  Sale of the Purchased Assets Free and Clear

33.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction.  Debtor believes that good cause exists to

expose the Assets to sale at auction.  An auction conducted substantially in accordance with the Sale Procedures will enable Debtor to obtain the highest and best offers for the Assets, thereby maximizing the value of its estate.

34.     A sale of the Assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). *See e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).  In determining whether a proffered business justification is sufficient, a court should consider:

> should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Continental Air Lines*, 780 F.2d at 1226 (quoting *Lionel Corp.*, 722 F.2d at 1071).

35. "Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the proposed purchaser is proceeding in good faith."  Del. & Hudson Railway, 124 B.R. at 176.

36. The Debtor has proposed the sale of the Assets after consideration of all viable alternatives, and has concluded that the sale is supported by a number of sound business reasons. In particular, the Debtor hired an investment banker prior to bankruptcy to market its business and/or assets.  The exercise was unsuccessful.  All potential buyers contacted pre-petition will be notified of this sale.   Accordingly, given the distressed financial condition of the Debtor, a sale of Assets is appropriate under section 363(b) of the Bankruptcy Code, as the courts in this Circuit and elsewhere have applied it.  *See e.g.*, *Tempo Technology*, 202 B.R. at 369-70 (approving a sale of all of the debtor's assets, within a month after the petition date, where the debtor faced a cash shortfall, operated in an industry where there were few potential proposed purchasers, and anticipated continuing losses and a decline in value of the bankruptcy estates); *Del.& Hudson Railway*, 124 B.R. at 177 (affirming the bankruptcy court's approval of a sale of substantially all of the debtor's assets where the debtor would have been "in liquidation mode if required to delay a sale until after filing a disclosure statement and obtaining approval for a reorganization plan"); *Titusville Country Club*, 128 B.R. at 400 (granting an expedited hearing on a motion to approve a sale as a result of "deterioration" of the debtor's assets); *Coastal Indus., Inc. v. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366-69 (Bankr. N.D. Ohio 1986) (approving an expedited sale pursuant to section 363(b) of the Bankruptcy Code just

five weeks after the petition date where the debtor was suffering operating losses).  All of the

factors discussed in the cases cited above apply to the Debtor and the Assets.

37.     Additionally, Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of
any interest in such property of an entity other than the estate, only if -
(1) applicable nonbankruptcy law permits sale of such property free and clear of such
interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than
the aggregate value of all liens on such property;
(4) such interest is in a bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money
satisfaction of such interest.

11 U.S.C. § 363(f).

38.     As quoted above, Section 363(f) of the Bankruptcy Code provides for the sale of

assets "free and clear of any interests." The term "any interest," as used in Section 363(f), is not

defined in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV,* 209 F.3d

252, 259 (3d Cir. 2000). In *Folger Adam,* the Third Circuit specifically addressed the scope of

the term "any interest." *Id,* at 258. The court observed that while some courts have "narrowly

interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is

towards "a broader interpretation which includes other obligations that may flow from ownership

of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).

39.     As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.,* 99 F.3d

573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in

*Folger Adam,* the scope of Section 363(f) of the Bankruptcy Code is not limited to *in rem*

interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could

sell their assets under § 363(f) free and clear of successor liability that otherwise would have

arisen under federal statute." *Folger Adam,* 209 F.3d at 258.

40.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all interests, except with respect to any interests that are Assumed Liabilities under the APA. *See In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs., Inc. v. Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtor submits that each interest that is not an Assumed Liability satisfies at least one of the five conditions in Section 363(f) of the Bankruptcy Code. The Debtor accordingly requests authority to convey the Assets to the Buyer, free and clear of all interests (except as otherwise provided in the APA).

41.     The Debtor has conducted a UCC search to determine possible lienholders of the Debtor's assets in conjunction with the proposed sale of the Purchased Assets. The Debtor has served such purported lienholders notice of this Motion, and will serve such parties with notice of any order approving the relief requested by this Motion. Accordingly, this Court should approve the sale of the Purchased Assets, and excluding the Excluded Liabilities, to the Highest Bidder, free and clear of interests under Section 363(f) of the Bankruptcy Code.

42.     As discussed in detail above, the Debtor has concluded that a sale of Assets represents the best manner in which to maximize value to creditors of the Debtor's chapter 11 estate. Preservation of value for the benefit of all constituencies is a compelling circumstance, and maximization of asset value for the benefit of all creditors is a sound business purpose, warranting authorization of the proposed sale of Assets. There is more than adequate business justification to sell Assets to the Successful Bidder(s).

**B.  The Buyer is Entitled to Good Faith Protections of Section 363(m).**

43.     The Successful Bidder(s) should not be liable for any of the Debtor's liabilities (other than assumed liabilities), as a successor to the Debtor's business or otherwise (the "Excluded Liabilities").   Extensive case law exists providing that claims against debtors are directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a buyer.

44.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests."   The term "any interest," as used in section 363(f) of the Bankruptcy Code, is not defined anywhere in the Bankruptcy Code.   *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003); *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).   In *Qualitech*, the Seventh Circuit construed the term "any interest" very broadly.   327 F.3d at 545.   In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258.   The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id*. at 258, citing *3 Collier on Bankruptcy* ¶ 363.06[1].   As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests.   Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

45.     Courts have consistently held that a proposed purchaser of a debtor's assets or interests pursuant to a section 363 sale takes free from successor liability resulting from pre-existing claims. *See Ninth Avenue Remedial Group*, 195 B.R. 716l, 732 (Bankr. N.D. Ind. 1996)

(stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *In re Johns-Manville Corp.*, 837 F.2d 89 (2d Cir.), (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code; *In re New England Fish Co.*, 19 B.R. 323 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); *In re Hoffman*, 53 B.R. 874 (Bankr. D.R.I. 1985), *aff'd*, 65 B.R. 985 (D.R.I. 1986) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes; *In re All Am. Of Ashburn, Inc.*, 56 B.R. 186 (Bankr. N.D. Ga.), *appeal decided by* 805 F.2d 1515 (11th Cir. 1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); *In re WBQ Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (State's right to recapture depreciation is an interest as used in section 363(f) of the Bankruptcy Code).

46.     For obvious reasons, the very purpose of an order purporting to authorize the sale of Assets free and clear of all lien interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the proposed purchaser arising from the debtor's pre-sale conduct.  Under section 363(f) of the Bankruptcy Code, the Successful Bidder(s) are entitled to know that the Assets are not infected with latent claims that will be asserted against the Successful Bidder(s) after the proposed transaction is completed.

47.     Existing case law authorizes the issuance of injunctions under these circumstances:

> Courts have long recognized that inherent within the authority to sell property free and clear of liens is the power to enjoin such creditors from pursuing the purchaser of such property. Nevertheless, more explicit protection is often needed to effectuate this important aspect of a § 363 sale.  In other words, an actual injunction barring creditors from suing a proposed purchaser of

> estate assets is sometimes necessary and appropriate to give the "free and clear" aspect of § 363(f) meaning.  When this is the case, a court has the power to "issue an [] order . . . necessary or appropriate to carry out [§ 363(f), one of] the provisions of the [Bankruptcy Code].

*In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) (citing 11 U.S.C. § 105(a)); *Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.)*, 361 F.2d 295, 299 (6th Cir. 1966).  Also, while the bankruptcy courts generally recognize that:

> § 105(a) neither creates substantive rights nor permits the courts to contravene the Bankruptcy Code," it is equally clear that under certain circumstances "a permanent injunction is necessary to 'carry out' the effect of the 'free-and-clear' language [contained in a § 363 sale order].

*W.B.Q. Partnership*, 189 B.R. at 110.  *See also In re P.K.R. Convalescent Centers*, 189 B.R. 90 (Bankr. E.D. Va. 1995)(the bankruptcy court enjoined a creditor from suing the proposed purchaser prior to the approval of the sale); *In re Paris Industries Corp.*, 132 B.R. 504 (D. Me. 1991) (enjoining creditors from filing suit against proposed purchaser where claim against predecessor in bankruptcy court was possible and free and clear sale enabled bankruptcy court to enjoin product liability claims as asserted against proposed purchaser).

48.     In this matter, the Successful Bidder(s) will be understandably unwilling to purchase the Assets of the Debtor, supposedly free and clear of claims, liens, rights, interests and encumbrances, only to be forced to repeatedly re-litigate the issue with the individual claimants after the sale is completed.  Accordingly, any potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims and any competing allegations should be resolved in the context of this chapter 11 case.

**C.  Good Faith Under Section 363(m) of the Bankruptcy Code**

49.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under

> subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a Proposed Purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a Proposed Purchaser's good faith status at a judicial sale involves fraud, collusion between the Proposed Purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).  *See also In re Miami General Hospital, Inc.,* 81 B.R. 682, 688 (S.D. Fla. 1988) ("The misconduct at a judicial sale that would destroy a buyer's good faith 'involved fraud, collusion between the Buyers and other bidders or the trustee, or an attempt to take generally unfair advantage of other bidders.'") *(quoting Abbotts Dairies,* 788 F.2d at 147).

50.    Moreover, the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111F.3d269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

51.    The Debtor intends to make an appropriate showing at the Final Hearing that the APA with the Buyer(s) is the result of a negotiated, arms'-length transaction, in which such Buyer(s) at all times acted in good faith.   Accordingly, the Debtor requests that the Court make a

finding that the Successful Bidder has purchased the Asset in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**D.  The Bidding Procedures Provided Herein Are Appropriate.**

52.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., In re Friedman's, Inc.,* 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. {In re Integrated Resources, Inc.),* 147 B.R, 650, 656-57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources,* 147 B.R. at 659 (same); *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.),* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).

53.    In that regard, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re Montgomery Ward Holding Corp.,* Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Fruehauf Trailer Corp.,* Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources,* 147 B.R. at 659; *In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("Competitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize the bidding, not to restrict it'").

54.    The Bidding Procedures proposed herein will provide a framework for the Debtor to entertain Qualified Bids for the Assets and, if they receive such Qualified Bids, to conduct the

Auction in a fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. This should increase the likelihood that the Debtor will receive the greatest possible consideration for the Assets. The Bidding Procedures also set forth a schedule for achieving these objectives in an expeditious manner, balancing the Debtor's desire to maximize recovery for the benefit of the estate, with the need to move quickly to avoid any further deterioration in value.

**E.  The Court Should Approve the Assignment and Assumption of Contracts.**

55.     As required by the APA, the Debtor requests approval of the ability to assume, assign, and sell the Assigned Contracts to the Buyer.

56.     The Assigned Contracts are those contracts or leases that the Debtor seeks approval to assume and assign to the Buyer as part of the Transaction under the AP A. The Debtor further requests that the Order provide that the Assigned Contracts will be assigned to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provisions in the Assigned Contracts, including those described in Sections 365(b )(2) and (f)(l) and (3) of the Bankruptcy Code, that prohibit such assignment.

57.     Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if -

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. 11 U.S.C. § 365(f)(2).

11 U.S.C. § 365(f)(2).

58.     Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section

365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default ... ;
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(l).

59.     Although Section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor-in-possession's decision to assume an executory contract, it is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Taylor,* 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. Nat'/ Fuel Gas Distrib. Corp.,* 872 F.2d 36 (3d Cir. 1989); *In re Gardinier, Inc.,* 831 F.2d 974, 975 n.2 (11th Cir. 1987). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption would benefit the estate or the rejection would allow the trustee to avoid burdensome obligations previously incurred by the Debtor. *In re Diamond Mfg. Co., Inc.,* 164 B.R. 189, 198 (Bankr. S.D. Ga. 1994). *See also Sharon Steel,* 872 F.2d at 40.

60.     The assumption, assignment, and sale of the Assigned Contracts as proposed in the APA is an integral part of the disposition of the Assets and, as stated above, such disposition provides the maximum available to benefit the Debtor's estate. To the extent no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Contract

Party to the applicable contract or lease. The payment of the Cure Amounts will be in full and final satisfaction of all obligations to cure defaults and compensate the Contract Parties for any pecuniary losses under such contracts or leases pursuant to Section 365(b )(1) of the Bankruptcy Code.

61.     Cure Amounts properly disputed by any contracting party to an Assigned Contract will be resolved by the Court at the Final Hearing.

62.     As set forth in this Motion and the APA, the Buyer is responsible for providing evidence of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of any Assigned Contract. The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See In re DH4, Inc.,* 2007 WL 3283781 at *4 (Bankr. S.D. Fla. 2007) ("What constitutes 'adequate assurance of future performance' must be determined by the facts of the proposed assumption"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). To the extent necessary, the Buyer shall provide evidence of its ability to provide adequate assurance to the contracting parties to the Assigned Contracts at the Final Hearing. In the event a competitive bidder is successful at the Auction, such Highest Bidder shall be substituted as the Buyer and shall undertake the obligation with respect to the Assigned Contracts as set forth herein.

## VII.   <u>Auction, Hearing and Notice</u>

63.     For the reasons described in this Motion, the Debtor wishes to proceed to an Auction and hearing on final approval of the sale of Assets as expeditiously as applicable law and the Court's calendar will allow, but still will give the requisite notice of such sale.

64.     In addition, the Debtor will publish an abbreviated version of the Auction Notice at least once in the Business Journals for the Houston, Dallas, Austin and San Antonio area markets at least ten (10) days prior to the Auction.  The Debtor contends that such notice of the Auction is good and sufficient notice and that no other or further notice is required.

65.     Immediately following entry of the Sales Procedures Order, the Debtor will distribute a Notice of Sale of Assets and Auction, a copy of which is attached hereto as <u>Exhibit F</u> (the "<u>Auction Notice</u>"), to Debtor's Full & Master Service Lists, the US Trustee and to DIP Lender.

66.     The Debtor has formulated the following timeline to effectuate the Transaction contemplated herein, and seek hearings and deadlines to be set as follows:

| Case Day | Activity/Deadline |
|---|---|
| On or before _____, 2016 | • Hearing on bidding procedures |
| _____, 2016 | • Qualified Bid Deadline |
| _____, 2016 | • Auction |
| _____, 2016 | • Last day to object to Transaction |
| ____, 2016 | • Final Hearing |
| On or before _____, 2016 | • Projected closing of Transaction |

67.     The Debtor is providing notice of this Motion to: (a) the Office of the United States Trustee; (b) DIP Lender; (c) Debtor's Full & Master Service Lists.  In light of the nature of the relief requested, the Debtor submits that no further notice need be given.

68.    No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (a) approve the Bidding Procedures attached hereto as Exhibit C; (b) set _____, 2016, beginning at _____.m. (CST) as the date and time for the Auction; (c) set _____, 2016 at ____.m. (CST) as the date and time for the Sale Hearing; and (d) grant such other relief, both at law and in equity to which they may be justly entitled.

DATED:  June 6, 2016

Respectfully submitted,

*/s/ Theresa Mobley*
THERESA MOBLEY
State Bar No. 14238600
VIANEY GARZA
State Bar No. 24083057

OF COUNSEL:
CAGE, HILL & NIEHAUS, L.L.P.
5851 San Felipe, Suite 950
Houston, Texas 77057
Telephone: (713) 789-0500
Telecopier: (713) 974-0344
PROPOSED ATTORNEYS FOR
ROYWELL SERVICES, INC.

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned counsel for the Debtor conferred with counsel for the DIP Lender regarding this Motion.  Counsel for the DIP Lender is unopposed to the Motion.

*/s/ Theresa Mobley*
THERESA MOBLEY


## <u>CERTIFCATE OF SERVICE</u>

I hereby certify that on June 6, 2016, the foregoing Motion was served via the Court's ECF notification system to the parties listed below at the email addresses listed.

*/s/ Theresa Mobley*
THERESA MOBLEY