IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ROYWELL SERVICES, INC.[1] | § | CASE NO. 16-60070-V-11 |
| | § | |
| Debtor | § | Judge David R. Jones |
| | § | |

**DECLARATION OF JOHN DAVID McLAIN IN SUPPORT
OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

John David McLain declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Vice President of Operations of Roywell Services, Inc., the above-captioned debtor and debtor-in-possession (hereinafter the "**Debtor**" or "**Roywell**").

2. On June 6, 2016 (the "**Petition Date**"), the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor continues to operate its business and manages its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. As the Vice-President of Operations, I am familiar with the Debtor's day-to-day operations, business affairs, and books and records. In order to enable the Debtor to operate effectively, to smooth the transition into chapter 11, and to any avoid any potential adverse effects as a result of the commencement of this chapter 11 case, the Debtor has requested various types of relief in several pleadings filed with the Court (the "**First Day Motions**").

---

[1] The last four digits of the Debtor's tax identification number are 6399.

4. I submit this Declaration in support of the First Day Motions and to otherwise provide the Court with the background facts of this chapter 11 case. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other management personnel of Debtor, and my review of relevant documents. If I were called to testify, I could and would testify competently to the facts set forth herein.

## THE DEBTOR'S BUSINESS

5. The Debtor was formed as a Texas corporation in 1965 and operated as a small oilfield cementing company in Baytown, Texas. In 1993, Roywell was acquired by John McLain, its current president and majority shareholder, and thereafter continued to do business in the state of Texas. Subsequently, the company began expanding and improving its facilities and began providing acid blending and related services to its customers in the oil and gas industry. This expansion required large capital investments of approximately $38 million. With this expansion, Roywell was capable of expanding its oil and gas related services throughout Texas and into Oklahoma.

6. Currently, Roywell is headquartered in Houston, Texas, and leases its offices in Houston and Corpus Christi, Texas. Roywell also leases maintenance and operating work sites to serve the major southwest basins (the Permian, Eagle Ford Shale, and Mid-Continent) in Victoria, Odessa, Taft, Refugio, and Kennedy, Texas and Thomas, Oklahoma. Approximately 70% of Roywell's revenues are generated from its Eagle Ford Shale operating locations. The company holds 200+ Master Service Agreements with numerous producers and operators in the oil and gas industry. Roywell's primary service, making up one-half of its operations, involves blending "raw" hydrochloric acid with water and other chemicals for use in oil and gas well completions. Roywell's operations provide a complete suite of oilfield related services which

are segmented into three divisions, (1) acid blending and logistics, (2) pumping, and (3) water transfer services.

### A. Acid Blending and Logistics Division

7. In its acid blending operations Roywell blends "raw" hydrochloric acid with water or chemicals primarily for hydraulic fracturing jobs. Its proprietary blending procedure enables acid blends to maintain a homogeneous composition for longer periods of time. The company maintains storage capacity for 290,000 gallons of raw acid in its Taft, Refugio and Odessa operating locations. In its acid blending operations Roywell is also affiliated with MGM Northstar, LLC, located in Conroe, Texas, which provides Roywell with the vast majority of the completion chemicals used in its acid blends. Roywell's logistics operations consist of the transportation, storage, and disposal of acid and other oilfield fluids. Frac tanks and winch trucks are rented to customers at a per day rate, while vacuum truck services are charged on an hourly rate to its customers. The majority of Roywell's logistics services is provided in conjunction with its acid blending and are rarely utilized on a stand-alone basis.

### B. Pumping Division

8. Roywell's pumping division primarily provides remedial fracturing and cementing services used in the maintenance of existing wells. Roywell provides cementing services for short strings of surface casing, liner cementing, plug and abandonment and specialized squeeze jobs. The company operates its pumping division out of Refugio and Odessa, Texas, and has the geographic reach to serve the entire Gulf Coast as well as the Eagle Ford Shale and Permian Basin.

C. **Water Transfer Division**

9. Roywell established its water transfer division in 2014; and it provides the set-up and rental of equipment used to transport water from its source to the operator's well-site. Through this division, lay-flat hose, poly pipe and related equipment are rented to customers on a per day basis. Roywell operates its water transfer division out of its operating site in Kennedy, Texas.

## EVENTS LEADING TO THE CHAPTER 11 CASE

10. Historically, Roywell was very successful in its business operations and had gross revenues in the amount of $111,172,880 in 2014. However, due to the unexpected downtown in the oil and gas industry within the past two years, Roywell's profits, like that of all other oil and gas service providers, has suffered significantly during the past year. Roywell began actively and diligently seeking investments from third parties and hired an investment banker to market its business and/or assets. However, with the unprecedented decrease in oil and gas prices and the unforeseen overall downturn in the oil and gas the company was unable to find investors who were willing to contribute the funds necessary to keep it from ceasing operations and releasing its remaining employees. Roywell also reduced its operational costs by reducing its employee count from 337 in November 2014 to 78 in January 2016 and shutting down its sand hauling operations in 2015; but it continued to lose significant amounts of money. For this reason, Roywell was compelled to explore options for restructuring its debts. Ultimately, it determined that seeking protection under Chapter 11 of the Bankruptcy Code was necessary.

## FIRST DAY MOTIONS AND ORDERS

A.      **Request for Designation as Complex Chapter 11 Bankruptcy Case**

11.     Roywell requests that the Court designate this case as a Complex Chapter 11 Bankruptcy Case pursuant to Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases and the Southern District of Texas' Procedures for Complex Chapter 11 Bankruptcy Cases and enter and Order Granting Complex Chapter 11 Bankruptcy Case Treatment.

B.      **Motion to Maintain Case Management System, Bank Accounts and Business Forms**

12.     By its Motion for Entry of Interim and Final Orders Authorizing the Debtor to (A) Maintain Prepetition Bank Accounts and the Cash Management System, (B) Continue Using Existing Checks and Business Forms and (C) Granting Related Relief (the "**Cash Management Motion**"), Roywell seeks authority to maintain its existing cash management system, bank accounts and business forms.

13.     Roywell manages its cash, receivables, and payables through a centralized cash management system (the "**Cash Management System**"). The Cash Management System utilizes the following seven (7) bank accounts all held with Capital One Bank (the "**Bank Accounts**"):

|    | Account Name                  | Account Number |
|----|-------------------------------|----------------|
| 1. | Operating Account             | XXXXXX6217     |
| 2. | Payroll Account               | XXXXXX6225     |
| 3. | Lockbox Account               | XXXXXX5610     |
| 4. | Savings Account               | XXXXXX6233     |
| 5. | Health Contributions Account  | XXXXXX1529     |
| 6. | Health Payments Account       | XXXXXX1537     |
| 7. | Flexible Spending Accounts    | XXXXXX3402     |

14. The two main accounts in the Cash Management System are the Operating Account and the Lockbox Account. The Operating Account is the main account for payments to third party vendors. This account also funds other accounts in the Cash Management System. Although the Operating Account sometimes receives deposits from customers, it is largely funded by the Lockbox Account, the primary account for the deposit of receivables from customers.

15. When Roywell needs cash to pay operating expenses in the ordinary course of business, it writes a check or electronically transfers funds from the Operating Account to pay invoices and expenses. Roywell also transfers funds from the Operating Account to other accounts maintained by Roywell in the ordinary course. For example, Roywell routinely transfers funds from the Operating Account to the Payroll Account to pay employees and taxing authorities.

16. Roywell also provides a self-funded health insurance plan to provide medical coverage to its (the "**Health Benefits Plan**"), and maintains two bank accounts to provide for the plan. The first account is funded mainly by Roywell but also by withholdings from participating Employees paychecks (the "**Health Contributions Account**"). Roywell also maintains a separate account to pay for any allowable claims made to the Health Benefits Plan (the "**Health Payments Account**", collectively the "**Health Accounts**"). The segregation of the Health Payments Account ensures that Baker Benefits Administrators ("**Baker Benefits**"), the Health Benefit Plan administrator, does not have access to all funds in the Health Contributions Account. Using claims information provided by Baker Benefits the Debtor transfers funds from the Health Contributions Account to the Health Payments Account.

17. To minimize expenses and interruption to the business, Roywell requests that it also be authorized to use its existing check stock and business forms for the Bank Accounts.

18. The entry of an order granting the Cash Management Motion is necessary to avoid immediate and irreparable harm to Roywell and its estate. I have read the factual allegations contained in Roywell's Cash Management Motion filed in this case and they are true and correct.

      **C.**      **Motion to Pay Pre-Petition Wages and Benefits**

19. By its Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to (I) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, and (II) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, and (B) Directing Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for Payment and to Honor All Funds Transfer Requests Related to Such Obligations Roywell seeks authority to maintain pay its employees any outstanding pre-petition wages, expenses and benefits owed to them (the "**Prepetition Wage Motion**").

20. Roywell currently has 76 employees all of whom are owed some amount for services provided prepetition for the two-week payroll period immediately preceding the petition date. As an employer, Roywell also provides certain benefits to its employees including paid time off, access to the Health Benefits Plan, and a 401(k) plan. To give Roywell the best chance at transitioning into chapter 11, Roywell asks for authority to pay any outstanding amounts owed for pre-petition services as provided in the Preptition Wage Motion. Roywell also asks for authority to maintain the benefits programs postpetition. I have read the factual allegations contained in the Prepetition Wage Motion and the same are true and correct.

### D. Motion to Authorize Cash Collateral Usage and Debtor in Possession Financing

21.     Effective November 30, 2011, Roywell entered into a credit agreement with Capital One Bank (the "**Credit Agreement**"). The Credit Agreement initially provided for an installment note in the amount of $7,000,000 (the "**Installment Note**"), an equipment loan facility in the amount of $3,000,000 (the "**Equipment Loan**"), and a revolving credit line of $5,000,000 (the "**Credit Line**"). The Installment Note was payable in forty-eight (48) monthly installments of $145,833 plus interest and matured on November 30, 2015. The proceeds from the Installment Note were used to pay-off installment consolidated notes payable to another lender. The Equipment Loan was used to purchase equipment and was converted to an amortizing note with forty-eight monthly installments of $62,200 plus interest and was scheduled to mature on November 30, 2016. In December 2012, Roywell obtained an additional $2,000,000 equipment loan from Capital One Bank which was converted to an amortizing note with forty-eight installments and maturing on June 30, 2017. The Credit Line was renewed and extended on October 14, 2014. In conjunction with the Credit Agreement, the Debtor executed Security Agreements effective November 30, 2011 and October 15, 2014, granting Capital One Bank a security interest in substantially all of its assets. Capital One Bank filed UCC financing statements with the Texas Secretary of State on December 6, 2011 and October 16, 2014.

22.     On June 6, 2016, all of the Capital One Bank debt was assigned to a Roywell LLC, a Delaware limited liability company ("**RLLC**") owned by Catapult Services, a private equity company in the oil field services industry. As of the Petition Date, the amount owing under the Capital One Bank debt is the sum of approximately $13.9 million.

23.     RLLC has agreed to provide secured DIP financing to the Debtor in an amount up to $3 million (the "**DIP Facility**"). The debt shall be secured by a second lien on all of the

Debtor's assets. The Debtor has requested authority to use necessary funds to pay expenses on its itemized 90-day budget which has been approved by RLLC. The DIP Facility will be used to help funds Debtor's operations while the Debtor effectuates a sale of its business as a going concern pursuant to an auction process with RLLC as the stalking horse bidder.

24. I have read the factual allegations contained in Debtor's Emergency Motion (I) for Interim Authority to Use Cash Collateral (II) to Incur Post Petition Indebtedness under 11 U.S.C. § 363, § 363(b), § 502(b), §503(b), and §105 and (III) Request for Preliminary and Final Hearings filed in this case and same are true and correct.

### E. Motion to Sell and Approve Bidding Procedures

25. The Debtor has tentatively entered into a sale agreement with Roywell LLC, the secured creditor and proposed DIP Lender, acting as the stalking horse. The Debtor proposes bid procedures to sell substantially all of its equipment, inventory, and business good-will as a going concern at auction. In its Motion for Orders (1) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (2) Approving Bidding Procedures in Advance of Auction and Various Bid Protections, (3) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases, (4) Setting Related Deadlines and Hearings and (5) Granting Related Relief (the **"Motion to Sell"**) the Debtor has requested emergency consideration and approval of its proposed bid procedures. The Motion to Sell along with the attachments thereto, including the asset purchase agreement and bid procedures, also sets forth the terms of the proposed asset sale and auction procedures to be used if any other qualified bidder intends to participate in an auction. I have read the factual allegations contained in the Motion to Sell and the same are true and correct.

## CONCLUSION

26. I respectfully request that the Court grant all relief requested in the First Day Motions, along with any and all other and further relief that the Court may deem to be just and proper.

27. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of June, 2016.

                                                      John David McLain
                                                     Vice President – Operations
                                                     Roywell Services, Inc.