

ENTERED
06/09/2016

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 16-60070-V-11** |
| **ROYWELL SERVICES, INC.** | § | |
| | § | **(Chapter 11)** |
| **Debtor** | § | |

### AGREED ORDER APPROVING BIDDING PROCEDURES IN ADVANCE OF AUCTION AND VARIOUS BID PROTECTIONS, SETTING RELATED DEADLINES AND HEARINGS AND GRANTING RELATED RELIEF

[Relates to Doc. No. 6]

Upon the motion (the "**Motion**") filed by Roywell Services, Inc., debtor and debtor in possession ("**Roywell**" or the "**Debtor**"), requesting an entry of an order pursuant to 105, 363(b), (f) and (m) and 365 of the Bankruptcy Code[1] on an emergency basis (1) approving the sale of certain assets of the Debtor (the "**Purchased Assets**") free and clear of all liens, claims, encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) of Title 11 of the United States Code (the "**Bankruptcy Code**") collectively (the "**Assets**"); (2) approving bidding procedures in advance of an auction and related bid protections; (3) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code; (4) setting an auction date, final hearing date and related deadlines; and (5) granting related relief, the Court, having reviewed the Motion and the objections thereto and having heard the statements of counsel and considered the evidence presented at a hearing before the Court on the Motion,

**THE COURT FINDS AND CONCLUDES AS FOLLOWS:**

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

B. Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. The Debtor filed the motion on June 6, 2016, proposing to sell the Assets (as defined and identified in the Asset Purchase Agreement) to a Buyer, and requesting approval of the Bidding Procedures related to the proposed Transaction (the "**Procedures Order**").

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

D.	The statutory and legal predicates for the relief sought in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

E.	The Debtor has articulated good and sufficient reasons for approving the Bidding Procedures and the Bid Protections and the form and manner of notice of the proposed Cure Amounts, Auction and the final hearing thereon (the "**Final Hearing**").

F.	The Bidding Procedures and the Bid Protections are reasonable and appropriate, and represent the best method for maximizing the return for the Assets. The relief granted herein is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.	Objections to the Bidding Procedures (defined below) approved herein must be filed by **June 20, 2016 at noon Central Time**. If an objection is filed, the Court will conduct a hearing on June 21, 2016 at 12:30 p.m. at **312 S. Main, Victoria TX 77901**.

2.	The Final Hearing on the Motion is set for   July 1  , 2016, at 11:00 a.m. (CDT), before the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in Courtroom 400, 515 Rusk, Houston, Texas 77002, at which time the Court shall consider the Motion, confirm the results of the Auction, if any, and consider approval of the Transaction.

3.	Objections to approval of the sale to the highest and best bidder must be filed and served such that they are received by Debtor's counsel no later than  12:00  **p.m. Central Time on  June 30 , 2016** (the **"Sale Objection Deadline"**).

4.	The failure of any objecting person or entity to file and serve its objection to the Sale, the Transaction, or the Debtor's consummation and performance of the APA, including the assumption and assignment of certain executory contracts, on or before the Sale Objection Deadline, as the case may be, shall be a bar to the assertion, at the Final Hearing or thereafter, of any objection to the Motion, the Auction, the Transaction, or the Debtor's consummation and performance of the APA, including the assumption and assignment of certain executory contracts, if authorized by the Court.

5.	The Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Procedures Order, subject to the restrictions on the use of cash collateral and orders of this Court with respect to same.

6.	Notice of the Procedures Order, Auction, Final Hearing, and the potential assumption and assignment of Assigned Contracts (as defined in the Motion) to the Buyer or

Successful Bidder, as the case may be, pursuant to the APA shall be good and sufficient, and no other or further notice shall be required, if given as follows:

a) <u>Notice of Auction and Final Hearing.</u>  As soon as practicable after the Court's entry of this Procedures Order, the Debtor (or its agents) shall serve a copy of this Procedures Order by first-class United States mail, postage pre-paid, upon (i) the Office of the United States Trustee; (ii) any persons who have entered an appearance in the case or otherwise requested notice; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a known interest in the relief requested by the Motion; (iv) all parties to executory contracts; (v) all secured creditors of the Debtor; (vi) all known unsecured creditors of the Debtor; (vii) counsel for any committee(s) formed pursuant to Section 1102 of the Bankruptcy Code (if any hereafter is formed); (viii) all persons or entities entitled to receive notice pursuant to the Bankruptcy Rules, the Local Rules of the Court, or other applicable law; and (ix) all other entities identified on the Debtor's Master Service List.  As soon as practicable after the Court's entry of this Procedures Order, the Debtor (or its agents) shall also serve a copy of this Procedures Order by overnight mail upon the following parties, and shall also attempt to contact the following parties by phone to invite discussion about this Procedures Order to the extent reasonably feasible: (i) all entities known to have expressed an interest in a transaction with respect to the Assets during the past three months (3) months; (ii) all entities known to have a present interest in the Assets; and (iii) all parties identified by or contacted by the Debtor or its representatives with respect to any investment in or sale of the Assets during the past three (3) months.

b) <u>Publication Notice</u>.  The Debtor shall publish notice of the Auction in the Houston Business Journal, Dallas Business Journal, Austin Business Journal and the San Antonio Business Journal at least 10 days before the auction.

c) <u>Cure Notice.</u>  On or before **June 10, 2016,** the Debtor shall serve by first-class United States Mail, postage pre-paid, on all non-debtor parties to contracts and leases that may become Assigned Contracts a copy of the Cure Notice of (i) the Debtor's potential intent to assume and assign that party's Assigned Contract, and (ii) the proposed cure amount (the **"Cure Amount"**) that the Debtor proposes as necessary to assume the Assigned Contract. Each non-debtor party to the Assigned Contract shall have until <u>June 17</u>**, 2016 at <u>5:00 p.m.</u>** to object to the assumption and assignment of the Assigned Contract or the Cure Amount and, if objecting to the Cure Amount, must state in its objection with specificity what Cure Amount the non-debtor party believes is required (with appropriate documentation in support thereof).  If no objection is timely received, the Assigned Contract may be assumed and assigned to the Successful Bidder on the closing date of the Transaction, and the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and the non-debtor party to the Assigned Contract shall be forever barred from asserting any other claims against the Debtor, the Successful Bidder, or their

property that arise out of or relate to the Assigned Contract, the Assets, or the Transaction.

7. Any final agreement purporting to memorialize an agreement for the disposition of substantially all of the Debtor's Assets by and between the Debtor and the Buyer or Successful Bidder, as the case may be, shall be substantially in the form of the APA and shall be substantially consistent with the terms and conditions thereof. The Debtor may revise the form of the APA in its sole discretion.

8. The Debtor is authorized to reject any bid or offer that the Debtor concludes, is not in conformity with the terms and conditions of the APA. Any creditor seeking to obtain copies of an APA or letter of intent must provide a written request to counsel for the Debtor and execute a confidentiality agreement which will be provided by Debtor's counsel upon receipt of such request.

9. The Court hereby approves the following bidding procedures (the **"Bidding Procedures"**) which shall govern all proceedings relating to the APA and any subsequent bids for the Assets in this case:

    A. **Sale of Assets.** The Debtor is offering for sale substantially all its assets.

    B. **The Bidding Process.** The Debtor shall (i) determine whether any person may ultimately become a Qualified Bidder (hereinafter defined), (ii) coordinate the efforts of potential Qualified Bidders in conducting its respective due diligence investigations regarding the Debtor's business, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offer made to purchase the Assets, together or separately (collectively, the "**Bidding Process**"). A potential Qualified bidder must execute a non-disclosure/non-solicitation agreement requiring such potential bidders to keep all information received from the Debtor confidential and promising not to solicit any employees. Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not deemed to be a potential Qualified Bidder.

    C. **Participation Requirements.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in order to participate in the Bidding Process each person (a "**Qualified Bidder**") must submit a bid (a "**Bid**") that adheres to the following requirements (a "**Qualified Bid**"):

    (i) Submitted to <u>Theresa Mobley, Cage Hill & Niehaus, LLP, 5851 San Felipe, Suite 950, Houston, TX 77057</u>, not later than 5:00 p.m. Central Time on June 27, 2016(the "**Bid Deadline**"). Debtor shall immediately distribute by facsimile transmission, personal delivery or reliable overnight courier service a copy of each Bid upon receipt to counsel for DIP Lender (a) Edward L. Rothberg, Hoover Slovacek LLP, 5051 Westheimer, Houston, TX 77056, (713) 977-5395 (fax);

(ii)    In the form of a letter from a person or persons that the Debtor deems financially able to consummate the purchase of the Assets, which letter states:

    (a)    that such prospective Qualified Bidder (a "**Bidder**") offers to purchase the Assets upon the terms and conditions set forth in a copy of Asset Purchase Agreement, together with any Exhibits and Schedules, executed by the Bidder and marked to show proposed amendments and modifications, including, but not limited to, price and the time of closing, and such modifications as are appropriate to reflect any modifications to the Assets proposed to be purchased (the "**Marked Agreement**");

    (b)    that each such Bidder is prepared to execute a contract within one business day following designation of such Bidder as the Successful Bidder and to consummate the transaction within ten days following entry of an order of the Court in substantially the form of the Order approving the sale to the Successful Bidder;

    (c)    that each such Bidder's offer is irrevocable until the earlier to occur of: (i) 30 days after the Sale Hearing or (ii) two (2) business days after the closing of a purchase of the Assets; and

    (d)    the nature of any insider relationship between any Bidder and the Debtor, or any member of any Committee appointed in the Bankruptcy Case;

(iii)    All Qualified Bids shall be (i) in the opinion of the Debtor, not materially more burdensome or conditional than the terms of the Asset Purchase Agreement;

(iv)    All Qualified Bids shall obligate the Bidder, upon submission of its Marked Agreement, to deposit into escrow not less than 10% of proposed bid or overbid  (the "**Good Faith Deposit**");

(v)    All Qualified Bids shall be, in the opinion of Debtor, substantially on the same or better terms and conditions as set forth in the Asset Purchase Agreement;

(vi)    All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtor, of committed financing or other ability to perform;

(vii)    All Qualified Bids shall contain no contingencies of any kind or character, including without limitation, contingencies relating to financing, validity, due diligence, or subsequent events other than approval of the Bid by this Court if the Bid is selected as the Successful Bid.

Bids not constituting Qualified Bids or that are otherwise defective cannot be remedied or otherwise resubmitted after the Bid Deadline.

D. **Due Diligence.** The Debtor shall afford each Qualified Bidder due diligence access to the Assets. Due diligence access may include management presentations as may be scheduled by the Debtor, onsite inspections and such other matters which a Qualified Bidder may request and which the Debtor, in its sole discretion, may agree to. Neither the Debtor nor any of its affiliates (nor any of its representatives) are obligated to furnish any information relating to the Assets to any person except to Qualified Bidders. Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives.

E. **Stalking Horse Bidder**. Roywell LLC ("**RLLC**"), the prepetition lender and DIP Lender, is the Stalking Horse Bidder and is allowed to bid up to the full amount of its prepetition and postpetition secured claim, estimated at $15.5 million. No other party is allowed to credit bid. The Stalking Horse Bid is deemed to be a Qualified Bid.

F. **"As Is, Where Is".** The sale of any or all of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor its agents or estate except to the extent set forth in the applicable agreement of the Successful Bidder(s) as approved by the Court. Except as otherwise provided in the applicable agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, equitable servitudes, and interests thereon and there against (collectively, the "**Lien Interests**") in accordance with section 363 and 365 of the Bankruptcy Code, with such Lien Interests to attach to the net proceeds of the sale of the Assets.

Each Bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection with the Assets, the Bidding Process or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, in the applicable Marked Agreement.

G. **Auction.** If the Debtor receives a Qualified Bid, other than the Stalking Horse Bid, it shall conduct an auction (the "**Auction**") at the offices of Cage, Hill & Niehaus, LLP, 5851 San Felipe, Suite 950, Houston, TX 77057, on June 29, 2016, or such later time or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. Only representatives of the Debtor, DIP Lender, the United States Trustee, any official committee appointed in the Debtor's bankruptcy case, and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtor may announce at the Auction additional rules for conducting the Auction, so long as such rules are not inconsistent with these Bidding Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor determine is relevant, the Debtor, in its sole discretion, may conduct the Auction in the manner it

determine will achieve the maximum value for Assets. Bidding will be conducted in increments of not less than $200,000 for the first bid, $100,000 for the second through sixth bids, and $50,000 for all remaining bids. To the extent a Stalking Horse Bidder is selected and elects to overbid, a Break-Up Fee will not be paid to the Stalking Horse Bidder if it overbids. DIP Lender shall be entitled to credit bid up to the full amount of the debt. No other party is allowed to credit bid.

The Debtor may adopt rules for bidding at the Auction that, in its business judgment, will better promote the goals of the bidding process and that are not inconsistent with any of the provisions of the Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

As soon as practicable after the conclusion of the Auction, the Debtor shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (ii) identify the highest or otherwise best offer for the Assets and any second-highest offer. At the Sale Hearing, the Debtor may present to the Bankruptcy Court for approval the Successful Bid. The Debtor reserves all rights not to submit any Bid which is not acceptable to the Debtor for approval to the Bankruptcy Court. If the Stalking Horse Bid is the only Qualified Bid, the Debtor need not conduct an auction.

      H.    **Acceptance of Qualified Bids**. The Debtor shall sell the Assets to the Successful Bidder, submitting the highest or otherwise best Qualified Bid at the Auction, upon approval of such Qualified Bid by the Bankruptcy Court at the Sale Hearing. The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

           11:00 A.M. on July 1

      I.    **The Sale Hearing.** The Sale Hearing shall take place at _____, 2016. At the Sale Hearing, the Debtor will seek entry of an order, among other things, authorizing and approving the sale to the Successful Bidder, as determined by the Debtor in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Purchase Agreement or the Marked Agreement submitted by the Successful Bidder (as such agreement may be modified prior to, during or after the Auction with the agreement of the Debtor). The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

      J.    **Return of Good Faith Deposit.** Good Faith Deposits of all Qualified Bidders shall be held in an interest bearing escrow account. Except for the Successor Bidder, the Debtor, acting or Escrow Agent, applicable, shall hold the Good Faith Deposits of all Qualified Bidders until the earlier of (a) two (2) business days after the closing of the sale by which all of the Assets that were the subject of such bid have been disposed of to one or more Qualified Bidders

pursuant to these Bid Procedures, and 30 days after the conclusion of the Sale Hearing, at which time the Good Faith Deposits of Qualified Bidders who are not the Successful Bidder will be returned to the Qualified Bidder.  If a Successful Bidder successfully consummates an approved Transaction, such Successful Bidder's Good Faith Deposit shall be applied to the purchase price in such transaction.  If a Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to (i) retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder, and (ii) seek all available damages from such Successful Bidder occurring as a result of such Successful Bidder's failure to perform.

K.     **Modifications.**  The Debtor may determine, in its business judgment, which Qualified Bid(s), if any, is the highest or otherwise best offer, (ii) consult with the representatives of any committee formed in the Bankruptcy Case, or other significant constituents in connection with the Bidding Process, and (iii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Debtor's sole discretion, is (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (z) contrary to the best interests of the Debtor, its estate, creditors and other parties in interest, provided the Debtor advise any official Committee, if formed, of such rejection.  At or before the Sale Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bidding Procedures to obtain the highest or otherwise best offer(s) for the Assets, the Debtor, may impose such other terms and conditions as it may determine to be in the best interests of the Debtor's estate, creditors and other parties in interest.

L.     **Closing.** Closing shall take place within fourteen (14) days after the entry of the Order, but in no event later than July 15, 2016, and shall be only upon such order becoming a final order, except upon the waiver of this prerequisite (of a final order) by the Successful Bidder.

10.     The Debtor reserves the right, in consultation with its professionals, to alter these Bidding Procedures, and to establish procedures and rules during the Auction, as it may determine reasonably appropriate to maximize the value realized by the estate, subject to the ultimate approval of its determinations by the Court.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.     This Order is without prejudice to any party in interest with proper standing to object to a sale on any grounds.

13.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Signed: June 09, 2016.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

APPROVED:

CAGE, HILL & NIEHAUS, LLP


*/s/ Theresa Mobley*
THERESA MOBLEY
State Bar No. 14238600
5851 San Felipe, Suite 950
Houston, Texas 77057
Telephone: (713) 789-0500
Telecopier: (713) 974-0344
ATTORNEYS FOR ROYWELL SERVICES, INC.

HOOVER SLOVACEK


*/s/ Edward L. Rothberg (signed by permission)*
EDWARD L. ROTHBERG
State Bar No. 17313990
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395
ATTORNEYS FOR ROYWELL SERVICES, LLC
AND CATAPULT ENERGY SERVICES GROUP, LLC

P a g e | **10**

# ANNEX 1

# Form Asset Purchase Agreement