

ENTERED
06/24/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-60070-V-11 |
| **ROYWELL SERVICES, INC.** | § | |
| | § | (Chapter 11) |
| Debtor | § | |

**FINAL AGREED ORDER AUTHORIZING (I) USE OF CASH COLLATERAL AND (II) DEBTOR TO INCUR POST PETITION INDEBTEDNESS UNDER 11 U.S.C. §§ 363, 364, 503(B)(1) AND 105**

[Related to Doc. No. 5]

Upon consideration of the Emergency Motion for (I) Authority to Use Cash Collateral Under 11 U.S.C. §§ 363 and 105 and (II) and to Incur Post Petition Indebtedness under 11 U.S.C §§ 364, 503(b)(1) and 105 (the "**Motion**") that was filed by Roywell Services Inc. ("**Debtor**" or "**Roywell**") in the above-captioned case, and finding the notice of the Motion having been given to (i) the Office of the United States Trustee for this district, and (ii) counsel for the Debtor's secured lender; (iii) the 20 Largest Unsecured Creditors; (iv) and any party requesting notice and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate and creditors; and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND

A. <u>Commencement of the Case</u>. On June 6, 2016 (the "**Petition Date**"), the Debtor filed for relief in this Court under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor maintains possession of its property, and is operating and managing its business as debtor-in-possession, pursuant to sections 1007 and 1008 of the

1

Bankruptcy Code. No trustee or examiner has been appointed in this case and no official committee of unsecured creditors has yet been established.

   B. <u>Jurisdiction</u>. The Court has jurisdiction over the Debtor's case, the parties and the Debtor's property pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtor's case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

   C. <u>Notice</u>. Notice of the Motion and the Final Hearing was adequate and appropriate under the circumstances and in accordance with Bankruptcy Rules 2002, 4001(b)(c) and (d), and 9014.

   D. <u>Debtor's Need to Use Cash Collateral</u>. The need exists for the Debtor to use Cash Collateral (as defined in Bankruptcy Code section 361) to continue to operate its business in compliance with the Agreed Budget attached hereto as **Exhibit A** and to conduct its business affairs so as to avoid immediate and irreparable harm to the estate.

   E. <u>Debtors' Stipulations and Waivers Regarding Lenders' Interest</u>. The Debtor admits, stipulates, acknowledges and agrees that:

     i. <u>The Pre-Petition Promissory Notes</u>. Effective November 30, 2011, Roywell entered into a credit agreement with Capital One Bank (the "**Credit Agreement**"). The Credit Agreement initially provided for an installment note in the amount of $7,000,000 (the "**Installment Note**"), an equipment loan facility in the amount of $3,000,000 (the "**Equipment Loan**"), and a revolving credit line of $5,000,000 (the "**Credit Line**"). The Installment Note was payable in forty-eight (48) monthly installments of $145,833 plus interest and matured on November 30, 2015. The proceeds from the Installment Note were used to pay-off installment consolidated notes payable to another lender. The Equipment Loan was used to purchase

equipment and was converted to an amortizing note with forty-eight monthly installments of $62,200 plus interest and was scheduled to mature on November 30, 2016.  In December 2012, Roywell obtained an additional $2,000,000 equipment loan from Capital One Bank which was converted to an amortizing note with forty-eight installments and maturing on June 30, 2017.  The Credit Line was renewed and extended on October 15, 2014.  In conjunction with the Credit Agreement, Roywell executed certain Security Agreements dated on or about December 6, 2011 and October 15, 2014, granting Capital One Bank a security interest in substantially all of its assets.  Capital One Bank filed UCC-1 financing statements with the Texas Secretary of State on December 6, 2011, and October 16, 2014.  As of the Petition Date, the outstanding balance owing under the Credit Agreement is the sum of approximately $13,916,000.00.  On June 6, 2016, all of the Capital One Bank debt was assigned to Roywell LLC, a Delaware limited liability company ("**RLLC**" or "**Lender**") owned by Catapult Services, a private equity company in the oil field services industry

    ii.  <u>The Pre-Petition Liens</u>. The parties stipulate that RLLC holds valid, perfected and unavoidable liens in the Collateral[1], and is hereby granted replacement liens and security interests, to the extent they existed as of the Petition Date, on all assets of the Debtor and its estate, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure the Debtor's use of cash Collateral, whether pursuant to this Order or otherwise, and to secure any diminution in value of the Collateral ("**Replacement Liens**").  Such Replacement Liens and security interests (i) are subordinate only to any prior existing and validly perfected liens and security interest in such assets, and (ii) shall attach in the

---

[1] Capitalized terms not otherwise defined have the meaning ascribed in the Motion.

same order of priority that existed as to the Collateral under applicable non-bankruptcy law as of the Petition Date, and to the extent of cash collateral that is actually used.

F. <u>Consensual Use of Cash Collateral</u>.  The Lender has consented to the Debtor's use of Cash Collateral in the ordinary course of business in accordance with the Agreed Budget, subject to the express terms and conditions set forth in this Final Order.

G. <u>Findings Regarding the Post-Petition Financing</u>.

i. <u>Need for Post-Petition Financing.</u>  The Debtor needs to obtain credit to enable the Debtor to continue operations and to administer and preserve the value of the estate. The ability of the Debtor to maintain business relationships with its vendors, suppliers and customers, and to otherwise finance its operations requires the availability of capital from RLLC, the absence of which would immediately and irreparably harm the Debtor, its estate, the creditors and equity holders.  The Debtor does not have sufficient available resources of working capital and financing to operate its business in the ordinary course of business without the DIP Financing from RLLC.

ii. <u>No Credit on More Favorable Terms.</u>  Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain adequate financing from sources other than RLLC.

IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted as set forth herein on a final basis (the "**Final Order**").

2. Subject to the terms and conditions of this Final Order and in accordance with the Agreed Budget attached hereto as **Exhibit A**,  the Debtor is authorized to use cash collateral as that term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**") solely in the amounts and solely for the purpose set forth in the Agreed Budget; provided however, the Agreed

Budget shall not permit nor include payment of any pre-petition unsecured creditors, except as may be provided in a separate order of the Court.

3. Debtor may draw so much of the funds necessary to pay expenses in accordance with the Agreed Budget, with up to a 10% total variance per line item so long as the amount of Cash Collateral used does not exceed the total amount for each weekly period in the budget. Unused amounts in one weekly period may be carried over to the next week only. Debtor must obtain the written consent of RLLC for a variance in excess of 10% per line item or the total amount for each weekly period.

4. <u>Insurance.</u> The Debtor shall maintain appropriate and continuous insurance on all of its assets, as the Lender shall reasonably require, in such amounts and on such terms as the Lender shall reasonably require and shall add Lender as an additional insured on all policies.

5. The Debtor is expressly authorized to use Cash Collateral to pay quarterly fees owing to the United States Trustee.

6. This is a final order for the use of Cash Collateral. Nothing herein shall prevent the Debtor and the Lender from authorizing the use of the Cash Collateral for additional expenses upon such other terms and conditions as may be mutually agreed upon.

7. <u>Adequate Protection.</u> Pursuant to Bankruptcy Code sections 361 and 363(e), the Lender is entitled to adequate protection of the Lender's interests in the Pre-Petition Collateral (including Cash Collateral) to the extent that there is a diminution in the value of its interest in the Pre-Petition Collateral from and after the Petition Date and the imposition of the automatic stay. As adequate protection for the use of Cash Collateral, the Lender is hereby granted adequate protection as follows:

    a. <u>Replacement Liens</u>. RLLC holds valid, perfected and unavoidable liens in the Collateral, and is hereby granted the Replacement Liens, to the extent they existed as of the

5

Petition Date. Such Replacement Liens and security interests (i) are subordinate only to any prior existing and validly perfected liens and security interest in such assets, and (ii) shall attach in the same order of priority that existed as to the Collateral under applicable non-bankruptcy law as of the Petition Date, and to the extent of cash collateral that is actually used.

      b.      Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code.

      c.      The Replacement Liens granted pursuant to this Order shall constitute valid, enforceable and duly perfected security interests and liens, and the Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection, enforceability or priority of such Replacement Liens. If, however, RLLC, in its sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Automatic Stay is hereby lifted to allow the filing and recording of any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of the Interim Order [Doc. No. 18].

      d.      The Replacement Liens shall be enforceable against the Debtor, its estate, and any successor thereto, including without limitation, any trustee or other estate representatives appointed in this Chapter 11 case, any case under Chapter 7 of the Bankruptcy Code upon a conversion of any of this Chapter 11 case, or in any other proceeding superseding or related to any of the foregoing (collectively, "**Successor Case**").

   e. The Adequate Protection Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code and shall not be subject to subordination, impairment, or avoidance for all purposes in these Chapter 11 cases and any Successor Case.

   f. All representations, rights and adequate protection granted to RLLC under the Interim Order shall continue under this Final Order and remain in full force and effect, and all relief granted under those orders is final and non-appealable.

  8. Immediately upon entry by this Court, the terms of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the Lender, all other creditors of the Debtor, any Committee, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 case, any Successor Case, or upon dismissal of these Chapter 11 cases or Successor Cases.

  9. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) converting this case to a case under Chapter 7 of the Bankruptcy Code, (b) dismissing the case or any Successor Case; or (c) pursuant to which this Court abstains from hearing this case or any Successor Cases.

  10. The Debtor is hereby authorized to obtain final post-petition financing from RLLC, pursuant to the DIP Promissory Note attached to the Motion as **Exhibit B** up to $3,000,000.00.

  11. The claim for funds advanced under the DIP Promissory Note shall have, pursuant to Bankruptcy Code § 364(c)(1), a super priority expense of administration in the Debtor's bankruptcy case and a second lien on all assets of the estate upon which the DIP Lender holds a pre-petition lien which will only be subordinate to (a) the fees and expenses of the Clerk of the Court or the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a); (b) the outstanding and unpaid post-petition fees and expenses of the professionals retained by the Debtor pursuant to Orders of this Court entered in accordance with §§ 327 and 1103 of the Bankruptcy Code.

12. The Debtor shall direct the collection of all accounts receivable to a lock box and applied first against the pre-petition revolving line of credit. If there is any surplus, it shall be applied to the DIP Loan.

13. If the Debtor defaults under the terms of this Final Order, the Debtors are entitled to written notice. Notice shall be sent to Theresa Mobley, Cage, Hill & Niehaus, LLP, 5851 San Felipe, Suite 950, Houston, TX 77057 via email tmobley@cagehill.com and facsimile (713) 974-0344. If the default is not cured within five (5) business days from the notice date, the Debtor's authority to use Cash Collateral under the terms of this Final Order shall terminate.

14. The Court retains jurisdiction with respect to all matters from or related to the implementation of this Final Order.

**Signed: June 24, 2016.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

APPROVED:

CAGE, HILL & NIEHAUS, LLP

*/s/ Theresa Mobley*
THERESA MOBLEY
State Bar No. 14238600
5851 San Felipe, Suite 950
Houston, Texas 77057
Telephone: (713) 789-0500
Telecopier: (713) 974-0344
ATTORNEYS FOR ROYWELL SERVICES, INC.

HOOVER SLOVACEK

*/s/ Melissa A. Haselden (signed by permission)*
MELISSA A. HASELDEN
State Bar No. 00794778
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395
ATTORNEYS FOR ROYWELL SERVICES, LLC
AND CATAPULT ENERGY SERVICES GROUP, LLC

# Exhibit A

**Cash Flow Forecast**      6/6/2016
**Roywell, LLC**      Thirteen weeks Forecast

| | Actual 03-Jun-16 | Week ending 10-Jun-16 | 17-Jun-16 | 24-Jun-16 | 01-Jul-16 | 08-Jul-16 | 15-Jul-16 | Bankruptcy Funding | 22-Jul-16 | 29-Jul-16 | 05-Aug-16 | 12-Aug-16 | 19-Aug-16 | 13 Week Forecast 19-Aug-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) OPENING CASH BALANCE | 100,000 | 100,000 | 40,800 | 56,600 | 82,354 | 132,149 | 224,914 | 100,000 | 209,889 | 40,364 | 15,787 | 19,087 | 22,387 | 100,000 |
| 2) CASH INFLOW - Receipts | | | | | | | | | | | | | | |
| Collections from accounts receivable | | 307,456 | 151,724 | 169,288 | 273,185 | 235,788 | 137,357 | 1,274,798 | 192,031 | 80,281 | 82,063 | 2,943 | 2,162 | 1,634,278 |
| Estimated Collection for Projected Revenue | | | | | | | | | | 322,619 | 322,619 | 322,619 | 322,619 | 1,290,476 |
| LOC Increases | | | | | | | | | | | | | | |
| Cash Sweep | | (407,456) | (151,724) | (169,288) | (273,185) | (235,788) | (137,357) | (1,374,798) | (192,031) | (402,900) | (404,682) | (325,562) | (324,781) | (3,024,754) |
| Total cash inflow | | (100,000) | | | | | | (100,000) | | | | | | (100,000) |
| 3) CASH OUTFLOW | | | | | | | | | | | | | | |
| (Disbursements) (A) | | | | | | | | | | | | | | |
| Material Purchases/ Inventory /Vendor prepayments | | (106,464) | (106,464) | (106,464) | (106,464) | (124,563) | (122,434) | (672,854) | (122,434) | (122,434) | (106,464) | (106,464) | (106,464) | (1,237,115) |
| Salaries, wages & fringe benefits | | (300,000) | | (227,248) | | | (227,248) | (754,495) | | (276,248) | | | (227,248) | (1,257,990) |
| Capital expenditure (ALL capital items) | | | | | | | | | | | | | | |
| Approved PO's | | | | | | | | | | | | | | |
| Auto Leases | | | | | | (50,000) | | (50,000) | | | (50,000) | | | (100,000) |
| Debtor's Professional Fees | | | | | | | | | | | | | | |
| Professional Fees | | (37,500) | | (37,500) | | (37,500) | | (112,500) | (37,500) | | | | | (150,000) |
| US Trustee | | | | | | | (10,000) | (10,000) | | | | | | (10,000) |
| CRO | | | (7,500) | | (7,500) | | (7,500) | (22,500) | | (7,500) | | | | (30,000) |
| Mail Services | | | (10,000) | | | | | (10,000) | | | | | | (10,000) |
| Credit Cards | | | (40,000) | | | | (20,000) | (60,000) | | | | | (20,000) | (80,000) |
| Travel & entertainment | | | | (15,000) | | | | (15,000) | | (15,000) | | | | (30,000) |
| Leases / Rentals / Rent | | (3,226) | (3,226) | (16,024) | (3,226) | (3,775) | (3,710) | (33,188) | (3,710) | (16,508) | (3,226) | (3,226) | (3,226) | (63,084) |
| Insurances - HLTH | | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (120,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (220,000) |
| Insurances - GL / WC | | | (15,000) | | (121,006) | | (15,000) | (151,006) | | (121,006) | | | | (272,012) |
| Sales Tax / Property taxes | | | (40,000) | | | | (478,252) | (518,252) | | | | | | (558,252) |
| Fuel, Main&Fees | | (25,810) | (25,810) | (25,810) | (25,810) | (30,197) | (29,681) | (163,116) | (29,681) | (29,681) | (25,810) | (25,810) | (25,810) | (299,907) |
| Others (see details below) | | (16,200) | (16,200) | (16,200) | (16,200) | (16,200) | (16,200) | (97,200) | (16,200) | (16,200) | (16,200) | (16,200) | (16,200) | (178,200) |
| Total cash outflow | | (509,200) | (284,200) | (474,246) | (350,206) | (232,235) | (940,025) | (2,790,111) | (269,525) | (624,576) | (221,700) | (171,700) | (418,948) | (4,496,560) |
| 4) NET CASH FLOW | | (609,200) | (284,200) | (474,246) | (350,206) | (232,235) | (940,025) | (2,890,111) | (269,525) | (624,576) | (221,700) | (171,700) | (418,948) | (4,596,560) |
| 5) CASH SURPLUS/DEFICIT (1)+(4) | 100,000 | (509,200) | (243,400) | (417,646) | (267,851) | (100,086) | (715,111) | (2,790,111) | (59,636) | (584,213) | (205,913) | (152,613) | (396,560) | (4,496,560) |
| 6) Anticipated borrowings / (surplus) DIP Loan | | 550,000 | 300,000 | 500,000 | 400,000 | 325,000 | 925,000 | Gross DIP Loan 3,000,000 | 100,000 | 600,000 | 225,000 | 175,000 | 405,000 | 4,505,000 |
| 7) ENDING CASH BAL. (6)+(7) | 100,000 | 40,800 | 56,600 | 82,354 | 132,149 | 224,914 | 209,889 | 209,889 | 40,364 | 15,787 | 19,087 | 22,387 | 8,440 | 8,440 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital Line of Credit - Balance | | | | | | | | | | | | | | |
| Available Line | | | | | | | | | | | | | | |
| Max Line | | | | | | | | | | | | | | |
| Liquidity | | 100,000 | 40,800 | 56,600 | 82,354 | 132,149 | 224,914 | 209,889 | | 40,364 | 15,787 | 19,087 | 22,387 | 8,440 |
| | | | | | | | | | | | | | | |
| AR Balance | | 1,900,000 | 1,900,000 | 1,915,163 | 2,086,058 | 2,239,389 | 2,288,823 | 2,430,500 | | 2,664,154 | 2,843,135 | 2,811,247 | 2,729,184 | 2,843,135 |
| Less: Weekly Collections | | - | -307,456 | -151,724 | -169,288 | -273,185 | -235,788 | -137,357 | | -192,031 | -402,900 | -404,682 | -325,562 | -324,781 |
| Forecast Revenue | | - | 322,619 | 322,619 | 322,619 | 322,619 | 377,464 | 371,012 | | 371,012 | 371,012 | 322,619 | 322,619 | 322,619 |
| Net AR | | 1,900,000 | 1,915,163 | 2,086,058 | 2,239,389 | 2,288,823 | 2,430,500 | 2,664,154 | | 2,843,135 | 2,811,247 | 2,729,184 | 2,726,242 | 2,840,972 |